HON. ASA O. ÁLDIS,
HON. JOHN PIERPOINT,
HON. JAMES BARRETT, } *Assistant Judges.*
HON. LOYAL C. KELLOGG,
HON. ASAHEL PECK,

## F. H. HARRIMAN *v.* ORANGE FIFIELD.

*Impounding Cattle. Appraisal. Damages. Notice.*

A pound is defined to be a place where beasts, subject to be impounded, are to be confined, kept and fed.

If a party, not a public pound-keeper, turns into his enclosed fields near his barn-yard, cattle that he has legally impounded in his own barn-yard, to graze during the days and puts them back into his barn-yard nights, he thereby loses his legal control over them.

Some instances referred to where a temporary removal may possibly be made without incurring this effect.

An irregular appraisal of damages would not prevent the impounder from lawfully detaining animals regularly impounded, for the legal charges and expenses, until they were paid or tendered.

An appraisal of damages procured by the fraud of the impounder would be wholly void.

Where an appraisal is in all respects made according to the provisions of the statute, and without fraud, the certificate of the appraisers would be conclusive. It is in the nature of a judgment.

*Quere.* Whether the owner of beasts impounded, who is duly notified to choose appraisers, and fails to appear for that purpose, is entitled to notice of the time and place of appraisal.

REPLEVIN for four cows. The defendant filed an avowry justifying the taking and detaining of the said cows on the ground that they were taken doing damage in his enclosure; also alleging in substance that there was no pound in the town of Orange, therefore, he caused them to be impounded in his own barn-yard, and that the plaintiff was notified thereof within twenty-four hours, and was notified to appear at the dwelling-house of the defendant within twenty-four hours to appoint appraisers to appraise the damages done, &c., and that the plaintiff failed to appear at the said dwelling-house within twenty-four hours after the said notice was given, whereupon the defendant applied to Samuel Kimball, Esq., a justice of the peace within and for the county of Orange, to appoint appraisers, and that appraisers were by him duly appointed and notified on the 26th day of September, A. D. 1859, and the plaintiff was also then and there duly notified that they would attend to making the appraisal on the same day, and that they assessed the damages at $30, and made a certificate of the amount and transmitted it to the defendant on the same day; and that the defendant kept and detained said cows in his barn yard until they were replevied. To this avowry the plaintiff filed eleven pleas, all of which, except the 6th and 9th, terminated in demurrer; and the court decided all the demurrers in favor of the defendant,—to which the plaintiff excepted.

The substance of the pleadings is given in the opinion of the court.

The case was tried at the June Term, 1862, PECK, J. presiding, upon two issues, one arising upon the allegation in the defendant's avowry that the plaintiff was notified of the time

and place of the hearing by the appraisers to appraise the damage done by the cattle, which was traversed by the plaintiff and issue joined to the country, and was found in favor of the plaintiff; and the other arising upon the defendant's allegation in his avowry, that the cattle were taken *damage feasant*, which was found for the defendant. The court continued the cause open for any motion therein, and for assessment of damages.

The defendant claimed that the written appraisal made by the appraisers was conclusive as to the amount of damages, but it appearing that Harriman did not attend the appraisal, and took no part in it, although he passed by in a wagon along the road within a few rods and in sight of where the appraisers and the defendant were examining the premises where the damage was done, preparatory to making their appraisal, and it appearing that the plaintiff's cattle had been in said lot on several occasions previous to the occasion of their getting in at the time of the impounding in question, and did more or less damage on each of such occasions, the court decided that the appraisal was not conclusive, and that the defendant could not recover damages done on occasions previous to the one when they were impounded, and not being able to find the damage done on the occasion of the impounding to be more than five dollars, assessed the damages so done at five dollars, and rendered judgment for that sum in favor of the defendant. To the foregoing decision of the court in the assessment of damages both parties excepted.

Exceptions were taken to other rulings of the court, but upon points not decided or discussed in the opinion.

*Wing, Lund & Taylor*, for the plaintiff, insisted first, that a man cannot impound cattle in his own barn-yard and give notice, and then shift from place to place on his farm twice a day, and treat his several enclosures as a pound and that without giving any notice to the owner of the cattle, and cited *Holden* v. *Torrey*, 31 Vt. 690 ; *Bell* v. *Thornton*, 1 Foster (N. H.) 448. Second, that the impounder knowingly procured a fraudulent appraisal of damages, and that the fraud would avoid the certificate.

Brown's Legal Maxims, marginal paging, 254 and 577, 1 Swift's Digest, 309. *Morris ex dem. Ludlow* v. *Gill*, 1 D. Chip. 49.

*Peck and Colby*, for the defendant.

The defendant had a right to turn the cattle out to feed in the day time. This was in September. The cattle were milk cows, and they needed green herbage and could not be well kept without it. The statute provides that they may be impounded in a barn or other enclosure. So long as they remained in the defendant's custody, whether in the mowing field or barn-yard, they were impounded. The defendant took only proper measures for their safe keeping. Might he not drive them to water? He was bound to keep them as the rules of good husbandry required. *Adams* v. *Adams*, 13 Pick. 384. The right of recapture is given by statute. Laws of 1856, p. 53.

The appraisal is conclusive. The plaintiff had notice to appear and appoint appraisers, and neglected to do so. The statute does not require notice of the time and place of appraisal after he has made default. Suppose a party is properly summoned into court and makes default, may not the clerk assess damages without notice? It is like the appraisal of real estate set off on execution. Notice must be given to appear and appoint appraisers,—nobody ever supposed it necessary to notify of the time and place of appraisal.

POLAND, CH. J. The plaintiff's first plea to the defendant's avowry, alleges that after the defendant had impounded the plaintiff's cows in his barn-yard, he suffered and permitted them to run at large in the fields and pastures of the defendant, and to escape therefrom into the highways and fields of other persons, where they were retaken by the defendant and placed in his pasture, where they were replevied by the plaintiff. The defendant in his replication to this plea, denies that he suffered said cattle to run at large and escape, as alleged by the plaintiff, and says that on the same day of the impounding he turned said cows into a six acre mowing field of the defendant to feed, which said mowing-field was then and there well fenced and enclosed, about

fifteen rods from the barn-yard aforesaid; that said cows were unruly, and because thereof afterwards on the same day without the knowledge or consent, and against the will of the defendant, escaped from said mowing-field into an adjoining field of one Raymond P. Camp, where they remained for a short period of time, to wit, three hours, that thereafterwards to wit, on the same day just as quick as the defendant had discovered said escape, he pursued and retook said cattle and shut them up in his barn-yard, wherein they remained up to the time they were replevied, except that during the day time of each day, they were turned into a ten acre mowing-field of the defendant, well fenced and enclosed, about fifteen rods from said barn-yard, wherein they were kept to feed during the day time aforesaid, &c.

The plaintiff demurred to the replication, and assigned several special causes.

Some of the other pleas of the plaintiff to the defendant's avowry are the same in substance as the first, and to replications to them similar to the one above stated, the plaintiff rejoined, and the defendant demurred specially.    The special demurrers from one side and the other, raise a multitude of nice technical points of special pleading, which we find no occasion to discuss or decide.

Under all this class of pleas, however terminating, there arises one question, and that is, the sufficiency of the defendant's answer to the pleas.    Is it good in substance?

It concedes that after the defendant had impounded the plaintiff's cows in his barn-yard, he turned them out to graze in his enclosed fields near his barn-yard, during the days, but placed them in his barn-yard nights.

The plaintiff's counsel claim "that the word pound has a precise meaning given by statute; that it is some place where the beasts are to be confined, kept and fed.    We are of opinion that this is substantially the sound view of the law; that it is not only fairly implied from the language of our statute regulating the subject, but that the whole object and spirit of the law, require us so to hold.    It is wholly a creation of the statute, a proceeding *in invitum*, and is not to be enlarged by construction beyond the fair meaning of the language used.

23

The object of the statute is to compel the owners of the cattle to restrain their cattle from running at large to the annoyance and damage of others, and to give to any one who is thus injured and annoyed, a summary remedy, not only to relieve and protect himself from such encroachment, but to compensate himself for the damage he has suffered. He is authorized to seize the animals, if taken in the act, and impound or imprison them, till his damages and charges are paid, and even to sell them at public auction, if the owner of the animals fails to make payment.

The action of both parties is required to be most prompt and speedy. Notice of the impounding must be given to the owner of the animals within twenty-four hours, and if the impounder claims for damages the animals have done, he must give notice for the appointment of appraisers of the damage at the same time, and all the subsequent action on both sides is equally summary. The legal duty of both parties is enforced by a system of penalties, designed for the protection of each. The whole proceeding goes upon the idea that the animals are confined in close legal custody, from which they are to be relieved at the earliest moment, after reparation can be made for the damage they have done, and the costs of the proceeding and charges for keeping.

It is made the duty of the pound-keeper " to supply such beast with suitable food and drink while in the pound," and he is made liable for all damage occasioned to the owner if he neglects to do so. The owner of the animal impounded, must within forty-eight hours after notice, either replevy or redeem the same, and on failure, he forfeits seventeen cents for each beast, for every day he so neglects and suffers such beast to remain in pound.

Not only does this language clearly imply a strict confinement of the animals and seem incompatible with the condition of their being allowed to run at large in fields and pastures and gather their own living for themselves, but the requirement of their speedy deliverance from the pound under so sharp a penalty, would hardly seem to be necessary, if they might be subsisted in this way. Another provision of the statute is, that if any per-

son shall break open any pound, or release any animal impounded, without lawful authority, he shall pay a fine of twenty-five dollars and all damages.

It is a novel idea of pound breach, that it consists in breaking into a man's pasture or meadow.

If the defendant's ground were sustained, great mischief might follow. The statute requires notice to the owner of the place of impounding, within twenty-four hours. He must pay all expenses of keeping, and if he does not replevy or redeem within forty-eight hours after notice, he is made subject to a penalty. The statute intends that the owner may know precisely where to find his animals, at any moment after notice. If they may be removed to other places and kept, without notice to him, he may not know where to find them, and he might suffer the penalty for that very reason. If they may be allowed to run in fields of ten acres, within fifteen rods of the pound, larger and more distant fields and pastures must be equally good, and great liability of escape and running at large would be incurred, and perhaps of final loss. It seems this very difficulty was experienced in this case.

These views so far as we can judge, have been universal in this state, and the entire practice under our impounding law conformed to them.

The only authority bearing very directly on this subject that has been produced to us is *Bills* v. *Kinson*, 1 Fost. N. H. Rep, 448. The head note of the case, which fully expresses the whole decision, is as follows : " If a pound-keeper drive from the pound to his barn or pasture creatures which have been legally impounded, for the purpose of more conveniently furnishing them with food and drink, he thereby loses his legal control over them."

It appears in the case that the barn and pasture were very near the pound, though the precise distance is not stated.

The statute of New Hampshire seems to be nearly identical with ours.

The case seems to us to be founded in good reason. We are not aware that there should be any distinction made between a

public pound and a public pound-keeper, and a case where the impounder impounds in his own yard or enclosure; but if any should be made, it would seem to be in favor of the public official, rather than the individual who administers the law himself, in his own favor.

The defendant's counsel endeavors to distinguish this from the case in Foster, by saying that in that case it appeared that the animals were taken to the barn and pasture of the pound-keeper for the convenience of feeding merely, while they say that does not appear here, and that the court should assume, in the absence of any allegation even, that in this case there was some clear necessity, or at least more than mere convenience, that required it. But certainly from what is alleged nothing more can be inferred. If a necessity existed, the defendant should have alleged it.

We are not prepared to say that the temporary removal of the impounded animals from the pound by the impounder, under any circumstances, should destroy his right to detain them. The case supposed in argument of driving the animals to water, under the direct care and control of the keeper or his servant, might perhaps be held allowable.

A removal necessary for the preservation of the animals, as in the case of a fire, or the like, it can hardly be doubted, might justifiably be made, but we have no occasion now to decide what might be done in such cases.

This conclusion furnishes one good answer to the defendant's avowry, and it is not necessary to seek for more.

Some other questions have been made and argued in the case, beside technical questions on the pleadings, and so far as we are fully agreed, we think best to announce our opinion, though not needful to decide the case.

An irregular appraisal of damages, would not prevent the impounder from lawfully detaining animals regularly impounded, for the legal charges and expenses until they were paid or tendered.

An appraisal of damages procured by the fraud of the impounder would be wholly void.

When an appraisal is in all respects made according to the

provisions of the statute, and without fraud, the certificate of the appraisers would be conclusive. It is in the nature of a judgment.

When the owner of the beasts impounded is duly notified to choose appraisers, and fails to appear, for that purpose, whether he is entitled to notice of the time and place of appraisal, the court are not fully agreed, and that point is not decided.

The judgment is therefore reversed, and judgment rendered for the plaintiff, according to the written agreement of the parties, for five dollars damages, and costs.