CALLAN, Appellant, v. SETHER, Respondent.

(139 N. W. 786.)

1. **Trespassing Animals—Impounded Cattle—Replevin—Counterclaim for Damages—Evidence.**

 In replevin by owner against poundmaster, for cattle trespassing on land of third person, damages sustained by the third person, not party to the action, cannot be recovered by defendant, and such claim was properly stricken from the answer; and evidence of such damages is admissible only to justify detention by poundmaster.

2. **Poundkeepers—Vacancy—Appointment.**

 Under Pol. Code, Sec. 1045, the board of supervisors of a town may appoint a poundmaster to fill a vacancy caused by failure of an elected poundmaster to qualify.

3. **Location of Pound—Location by Supervisors.**

 Under Secs. 1003, 1008, Pol. Code, concerning location of pounds and the government of townships, the power of determining location of pounds is in the electors, and the supervisors had no authority to locate a town pound, nor to change its location after it had been made by electors; and defendant's

possession and restraint of plaintiff's cattle in a pound located
by supervisors, was wrongful.

4.   **Damage Feasant—Waiver of Damages by Lessor—Impounding.**
Where cattle of a lessee trespassed upon a parcel of land
reserved by lessor under a grazing lease, lessor having expressly
agreed that lessee should not be liable for trespass of his cattle
on such parcel, the risk of damage to lessor's reserve was
assumed by him, and he became a trespasser when he impounded
the cattle.

5.   **Distraint for Damage Feasant—While and Where Trespassing.**
To justify distraint of cattle for damage feasant, they must
be taken in the act of trespass and before they leave premises
upon which damage was done.

6.   **Pounds—Regulations for Impounding—Statutory Provisions.**
Under Sec. 1003, subd. 4, Pol. Code, Sec. 1008, subd. 5, and
Sec. 1027, relating to location of pounds and regulation of their
use, the electors and the supervisors of a town must act, before
the office of poundmaster can be put in operation; and until
necessary rules and regulations for impounding animals are
adopted by the electors, a poundmaster has no law to enforce
and is without authority to impound animals.

7.   **Common Law Distraint—Statutory Supervision.**
The common law giving right to distrain cattle trespassing on
land, is not in force in this state, such right being regulated
wholly by statute. **Held,** further, that Sec. 1008, Pol. Code,
confers by implication, the power to create, as well as to regu-
late the exercise of, the right to impound trespassing cattle.

8.   **Herd Law—Statutory Regulation—Seizure of Animals.**
Laws 1907, Chap. 244, providing for collecting damages caus-
ed by trespassing animals, provides for, and regulates the exer-
cise of, a remedy in townships where town boards and electors
have taken no action to put a pound into operation.

9.   **Action—Joinder of Causes of Action—Replevin, and Damages for
Detention of and Injury to Property.**
Under Code Civ. Proc., Sec. 144, subd. 6, authorizing replevin
and recovery of damages, etc., in the same action, a recovery
of cattle wrongfully impounded and damages for wrongful
taking and detention thereof, and also for mistreatment and
consequent depreciation in value of property during detention,
may be had in one action.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Stanley County. Hon. LYMAN T.
BOUCHER, Judge.

Action by Dennis Callan against William Sether for recovery
of cattle taken for alleged trespass, and for damages for detention

and misuse of the cattle. Defendant justified as, and counter-claimed for fees as, poundmaster, and for damages to the owner resulting from the trespass. From a judgment for defendant, plaintiff appeals. Reversed and remanded for new trial.

C. A. *Bennett,* for Appellant.

These cattle were taken possession of by defendant, and held by him for the purpose of securing for Eberhard alleged damages for an alleged trespass committed by these cattle upon the premises of said Eberhard. Of course, in addition to these damages, the defendant claimed certain pound fees, he claiming to be pound master of said township. This being a replevin action for the recovery of these cattle which defendant was thus withholding from plaintiff for the purpose of recovering this alleged damage, we believe it was error on the part of the trial court to allow defendant to change the issues at the trial, and thus attempt to relieve the defendant from the position in which he placed himself when he illegally held these cattle for these alleged damages. The error the court made in this case was in the refusal to grant the motion made by plaintiff at the close of defendant's testimony and again renewed at the close of all the testimony, and in granting the motion made by defendant at the close of all the testimony, as embraced in assignments 13 to 17 inclusive, and which assignments, for convenience, may all be considered together.

Plaintiff strenuously contends that defendant was not the pound master, nor was his corral the public pound of said township. The only law we have in this state governing the establishment and control of public pounds is contained in Articles 4 and 22 of the Political Code.

The defendant, in attempting to justify his holding of these cattle, offered in evidence the book containing a record of the proceedings of the electors at their annual meeting and also the proceedings of the township supervisors of Ash Creek township. The first portion of said book offered being Exhibit B, from which it appears that at the annual meeting of the electors of Ash Creek township, on the 2nd of March, 1909, one Martin Russell was elected pound master, and the pound was located on the northwest quarter of section 34 township 4 North, Range 18 East, there being twenty-three ballots cast for the above proposition and also that fifty dollars was set aside for the building of the pound. The

defendant also offered Exhibit C in evidence, which was a record of a meeting by the supervisors of Ash Creek township on the 12th day of March, 1909, and wherein it is stated that Martin Russell elected, by the electors as aforesaid, failed and refused to qualify. Defendant further offered in evidence Exhibits D and E, which were also a record of the proceedings of a meeting of the supervisors of said township held on the 22nd day of April, 1909, wherein the supervisors appointed the defendant, William A. Sether, pound master of Ash Creek township, on account of the failure of Martin Russell to qualify, and attempted to change the location of the pound established by the electors, as above described, to another place, to-wit: The southeast quarter of section 33, Township 4 North, Range 18 East.

We contend that it was not within the power of the supervisors to change the place of the pound from where it had been established by the electors, nor to establish any new pound, because the statute expressly gives that authority to the electors.

But, secondly, neither the electors or supervisors at any time attempted to "make any rules and regulations for the impounding of animals," as provided by subdivision 5 of section 1008 of the Political Code.

Prior to the adoption by the people of Stanley county of Chapter 244 of the Session Laws of 1907, that county was in the range country, where animals were allowed to go where they pleased, provided they did not breach a legal fence. Under said Chapter 244, the Legislature has laid down the conditions under which a man may take and hold cattle for damaging his premises. That law is a complete remedy within itself, and certainly cannot be distorted to read that a person may take up animals trespassing upon his private property, and in addition to his damages, impose upon them the penalty of pound fees.

See section 1004 of the Political Code, and Van Antwerp v. Dell Rapids Township, 5 S. D., page 450 .

In the trial of this cause, the defendant failed to show, and could not show, that the township had ever attempted in any manner to pass, township ordinances or by-laws, providing the manner and conditions under which animals could be impounded. Nevertheless, this defendant attempted to assume that he had the right to hold animals for an alleged trespass upon the private prop-

erty of some person in the township, and in addition to recovering the damages for this person, impose upon the owner the pound fees provided by the statute in proper cases.

The plaintiff being the owner of the cattle the burden of proof was upon the defendant to show under what authority and by what right he held these cattle. He having failed to do this, we believe that the trial court should have granted the motion of plaintiff to direct a verdict for the recovery of possession of the cattle, and submitted to the jury the question of plaintiff's damages for defendant's manner of holding and improperly caring for these cattle, and we have always been unable to see upon what theory or ground the trial court directed a verdict for the defendant. Johnston v. Kirchoff, 31 Minn. 453.

Even had the defendant been able to show that he had impounded these cattle in the place provided for by the electors, and under rules and regulations as adopted by the electors, still there was one other question that we contend should have gone to the jury, and that was: "Was the care of these cattle by the defendant of such a negligent and improper manner as to damage the cattle?" The plaintiff offered strong evidence to that effect, and while th same was attempted to be rebutted by the defendant, still the disputed fact was a material issue that should have been submi ed to the jury.

*I. H. Potter,* for Respondent.

The fact of such trespass gave Eberhard the right to take possession of the animals. Section 4, Chapter 244, Laws of 1907.

Under the common law, which is in force in this state on all subjects as to which there is no statutory legislation, Eberhard had the right to deliver the cattle to the pound keeper for detention. He had this right independently of any ordinance or regulation that might be passed by the electors of the township under section 1008 of the Political Code. This section confers no power on the township to create any right to impound. It merely gives the power to regulate the manner of impounding. The right exists in every township throughout the state and cannot be defeated by inaction, or failure of the township to regulate it.

It seems to be a well established law that it is the duty of a pound master to receive whatever animals are brought to him, and that the owner is left to his remedy against the person who

wrongfully takes the animals to the pound keeper. 16 Am. & Eng. Enc. 6.

If Eberhard failed to comply with the conditions of the statute precedent to a suit for damages by him, this failure affected himself alone, and not the rights of the pound keeper. Before the plaintiff could recover the cattle, he must pay or tender the fees provided by law, and which had been earned by the pound keeper regardless of anything which Eberhard may thereafter have done.

The evidence shows that the defendant was de facto pound master, and the legality of his appointment cannot be questioned in this case. This is a familiar and fundamental principle, and needs no citation of cases to support it. He was acting under color of title, and this is sufficient to make his acts valid: Merchants National Bank v. McKenney, 2 S. D. 106.

The same principle is applicable to the location of the pound. The evidence shows that the enclosure used as the pound was erected by the township board at a cost of $50.00, and that it was the only pound within the township. (Folio 65).

The refusal of the trial court to permit the plaintiff to litigate in this replevin action, his alleged claim for damages for mistreatment of his property was correct. The Code of Civil Procedure provides that the plaintiff may unite in the same complaint a claim to recover personal property, with damages for the withholding thereof. The claim of plaintiff did not fall within this section. His claim for damages on account of the alleged maltreatment of the detained property by the defendant could not be tried in a replevin action.

If a man takes wrongful possession of personal property and, while it is in his possession, starves it to death, or injures it by want of care, this is an independent tort, in no way connected with the original taking, and is not damages for the withholding of the property.

The law does not contemplate that a pound master shall be required to determine before receiving cattle into his possession whether the party offering them had or had not rightfully acquired possession.

It was the duty of the plaintiff, in any event, to tender to the defendant the costs and charges of recovering and keeping the

cattle. The fact that the defendant may have made an additional claim erroneous in its nature for the compensation due Eberhard did not relieve the plaintiff from the obligation imposed upon him by law to pay such costs and charges.

POLLEY, J. During the month of April, 1909, the plaintiff leased from one Henry Eberhard the N. W. ¼ of section 10, in Ash Creek township, in Stanley county, belonging to said Eberhard, and also the quarter section adjoining this on the north, known as the Leach land. The lease was verbal, but the consideration was paid in advance. Plaintiff was to use the land for grazing or for cutting hay, or any other use to which he wished to put it. Eberhard reserved for himself a small piece of garden land, or "truck patch," as he called it, but agreed with plaintiff, at the time of making the lease, that he would fence his garden, and that, if plaintiff's cattle got into it, it would not cost plaintiff anything. Plaintiff used the leased land for grazing purposes from the time of making the lease until the 3rd day of July, 1909.

Early in the morning of July 3d Eberhard gathered 98 head of plaintiff's cattle on or near the leased premises in section 10, and drove them to a corral, alleged to be the town pound, situsated on the S. E. ¼ of section 33, in Ash Creek township, and owned and occupied by the defendant. Plaintiff took up the trail of his stock shortly after Eberhard started with them, and followed them to defendant's place, where he arrived very shortly after they had been put into said corral, and demanded that they be released and delivered to him. This demand was refused, and the cattle were retained by defendant for four days. Plaintiff brought this suit in claim and delivery, alleging in his complaint, after a particular description of his stock, that they were wrongfully detained by the defendant; that they were not properly fed or watered while in defendant's possession; and that, because of their not having been properly fed and watered, the cattle depreciated in value, to plaintiff's damage, in the sum of $500. He prayed for the recovery of immediate possession of his stock and his damage in the sum of $500. He furnished a bond, and had the stock returned to him by the sheriff.

The defendant, in his answer, justified his detention of plaintiff's stock as follows: "For a separate and specific defense, the

defendant alleges that the cattle described in the complaint were
placed in the Ash Creek township pound for the purpose of hav-
ing them held there for damages done to the growing crops, corn,
grain, vegetables, and garden of Henry Eberhard, which damage
was claimed by the said Henry Eberhard and which damage
amounted to the sum of $35, and the said cattle were kept in
said pound for the purpose of satisfying said damages; that
said damages had not been paid at the time the cattle were taken
by the writ of replevin out of the possession of the defendant;
neither had the plaintiff offered to pay any of the said damages
claimed by the said Henry Eberhard; that the said cattle were
placed in the said pound on or about the 3d day of July, A. D.
1909, and were kept in said pound by the said poundmaster, Wm.
A. Sether, up to and including the 7th day of July, A. D. 1909,
and the charges for keeping the said cattle in said pound during
said period at 25 cents a head is the sum of $98, and for taking
into said pound 98 head of cattle at 20 cent a head is $19.60, the
amount of hay fed to said cattle during said four days is six tons,
at $5 a ton, or $30, making a total of $157.60, which sum of
$157.60 was then due and owing to the poundmaster, Wm. A.
Sether, of Ash Creek township, Stanley county, S. D., and which
sum was demanded of the plaintiff prior to the commencement of
this action, and at the time the cattle were taken by the writ of
replevin in this case; but the plaintiff refused and neglected to
pay the said sum of $157.60 for the care and keeping of the said
cattle in the pound of Ash Creek township, Stanley county, S. D.
The plaintiff also neglected and failed and refused to pay the
sum of $35 damages due to Henry Eberhard for the damages
done to his vegetables, garden, and premises on section 9 and
section 4, township 4, range 18 E. B. H. M., which damages were
due and owing to the said Henry Eberhard, and the cattle de-
scribed in the complaint had been, and were, held for the satis-
faction of said damages, expenses, and costs and fees, as provided
by law, all of which the plaintiff failed, refused, and neglected to
pay before taking the cattle. Defendant further says that the
plaintiff never made any demand whatsoever upon this defendant
in person for the possession of said cattle prior to the commence-
ment of this action; and that there now is due and owing to the
defendant the sum of $192.60 for the taking and impounding of

the cattle described in the complaint, and for the keeping, for the feed furnished to them, and for the damage done to Henry Eberhard's premises as set forth herein, all of which was due and owing by plaintiff to defendant as poundmaster at the time this action was commenced." He also set up a counterclaim, in which he asked for the return of the cattle or $192.60 in case they could not be returned, and for the costs and disbursements of this action.

The case was tried to a jury. At the close of the trial, plaintiff and defendant each moved the court to direct a verdict in his favor. Plaintiff's motion was denied, and the court directed the jury to return a verdict in favor of defendant, which they did, fixing the value of the cattle at $2,940, and fixing the value of defendant's lien thereon at $113.70, whereupon the court entered judgment, awarding the defendant possession of the cattle, the amount of the lien as fixed by the jury, and his costs and disbursements taxed at $243.55, amounting in all to the sum of $357.25. The court denied plaintiff's motion for a new trial, and he brings the case here on appeal. The plaintiff saved exceptions to practically all the rulings of the court, and numerous errors are assigned upon these rulings. Consideration of such assignments as are necessary to arrive at a conclusion of the case will be taken up in their order.

[1] At the beginning of the trial and before the introduction of any evidence, the defendant gave notice that he would not make any claim for damages due Eberhard by reason of the trespass of plaintiff's cattle, and moved to strike out all that portion of his answer pertaining to such damage. The plaintiff objected, which objection was overruled by the court, and this ruling is assigned as error. The objection was not well taken. The claim for damages, while not separately pleaded, constituted an independent cause of action, but it was in favor of Eberhard, who was not a party to the suit, and the same would have been stricken out by the court upon the motion or demurrer of the plaintiff. Evidence to prove the allegation of damage to Eberhard, except for the purpose of justifying defendant's detention of the cattle, would not have been admissible in this case, even though the allegation had been allowed to stand.

[2] The next assignment to be considered brings up the validity

of the defendant's appointment as poundmaster of Ask Creek township, the location of the town pound, and the right of Eberhard to have the plaintiff's stock impounded. The record of the proceedings of the town meeting and meeting of the town board of supervisors held during the months of March and April preceding the alleged trespass were offered, and, over the objection of plaintiff's counsel, admitted in evidence. From these proceedings it appears that one Martin Russell was elected as poundmaster, and that the town pound was located on the N. W. ¼ of section 34, in Ash Creek township. This was done by the electors of the township. Russell refused to qualify. This left a vacancy in the office of poundmaster, and the board of supervisors, acting under authority of section 1045 of the Political Code, appointed the defendant to fill the vacancy. He immediately qualified, and became the duly appointed and legal poundmaster of the township. The board had power to fill this vacancy, and his appointment was, therefore, legal.

[3] The board of supervisors at the same meeting also undertook to change the location of the pound, and locate it on the S. E. ¼ of section 33 of Ash Creek township. This last act the board was without authority to perform, and the town pound remained upon the N. W. ¼ of section 34.

Section 1008 of the Political Code provides: "The electors of each town have power, at their annual meeting: 1. To determine the number of pound masters and the location of pounds * * * (2) To select such town officers as are required to be chosen. * * * * * (5) To make all rules and regulations for impounding animals." Section 1003 provides: "Each organized township in the state of South Dakota is a body corporate, and has capacity * * * (4) To pass bylaws or ordinances for the government of such township and for the protection of the lives and property of its inhabitants, and to enforce the same in its corporate name before any justice of the peace in such township; and the process of procedure shall be the same as other actions before justices of the peace, and to make such orders for the disposition, regulation or use of its corporate property as may be deemed by its board of supervisors to be conducive to the best interests of its own inhabitants." It will be noted that, under section 1008, it is the electors who determine the number of poundmasters and the location of

pounds. In case of a vacancy in any town office the board of supervisors has the power, and it is made their duty, to fill the vacancy by appointment; but this power does not extend to the determining of the number of poundmasters or the location of pounds, nor to the making of rules and regulations for the impounding of animals. This power is reserved to the electors themselves, and the board of supervisors had no authority to locate a town pound, nor to change its location after it had been made by the electors. This being the case, the township pound having been located by the electors on the N. W. ¼ of section 34, in Ash Creek township, it remained there until its location was changed by the electors of the township. From this it follows that there was no town pound on the S. E. ¼ of section 33, and defendant's possession and restraint of plaintiff's cattle on the S. E. ¼ of section 33 was wrongful from the beginning. It may be contended that it is immaterial to the plaintiff where his cattle were impounded, if the distraint were lawful in the beginning, but this does not answer the question. The right of making this location, or change of location, having been vested in the electors themselves, it is not within the province of the board of supervisors to say that they can make as wise a selection as the electors or that one location is as good as another. Furthermore, feed and water, or other means of properly caring for and looking after the comfort of distrained stock, may be much more available in one location than in another; and thus the location may become very material to the owner of the distrained stock.

[4] The appellant contended that he was in no wise liable to the said Eberhard for any damage that may have been caused by his stock, for the reason that the trespass took place on a piece of land that he had leased from Eberhard; that, in the making of the lease, Eberhard agreed to protect his truck patch with a fence; and that, if plaintiff's cattle did do any damage, it should not cost the plaintiff a cent. That such was the agreement was clearly proved at the trial, and was not disputed by Eberhard or the defendant. It may be that it was this very agreement on the part of Eberhard that induced plaintiff to make the contract and pay the rent for the use of this piece of land; but, be this as it may, the risk of damage to Eberhard's garden patch was assumed by

himself, and hence he became a trespasser when he proceeded to impound plaintiff's cattle.

[5]    But, even were this not the case, Eberhard, under his own testimony, had no right to take possession of plaintiff's stock. While upon the stand he testified relative to where he got the cattle as follows: "When I got there (meaning his garden patch), the cattle had been there during the night, and destroyed everything in there. I saw the trail of these cattle, and followed them until I came onto them in the road, between sections 3 and 9. The cattle were about three-fourths of a mile from the land I leased to Mr. Callan." In other words, the cattle had been upon the premises, caused whatever damage there was, and then had left the premises before Eberhard saw them, and he was obliged to follow their trail a distance of three-fourths of a mile before he found them. This he had no right to do under any circumstances The unvarying rule relative to distraining cattle for trespass since time immemorial is that they must be taken "damage feasant"; that is, they must be taken in the very act of doing the damage, and before they have left the premises upon which the damage is committed. 2 Cyc. 403; Harriman v. Fifield, 36 Vt. 341; Warring v. Cripps, 23 Wis. 460; Holden v. Torrey, 31 Vt. 690; McKeen v. Converse, 68 N. H. 173; 39 Atl. 435. The facts, as related by Eberhard himself, do not bring him within this rule; and, for that reason, his possession of said stock was wrongful from the beginning.

[6]    But the weakness of respondent's case goes back further than any irregularities in the location of the township pound, or the manner in which appellant's cattle were impounded. Nowhere in this record is there a suggestion that the board of supervisors of Ash Creek township had ever made any "rules or regulations for the impounding of animals," or provided by bylaws or ordinances providing when or under what conditions animals of any kind might be impounded. By sub-division 4 of section 1003, Pol. Code, the town board is empowered "to pass bylaws or ordinances for the government of such township and for the protection of the lives and property of its inhabitants." By subdivision 5 of section 1008 the electors are required "to make all rules and regulations for impounding of animals." And section 1027 provides the necessary steps for the enactment of or-

dinances and by-laws. Thus it is necessary for the electors and board to act before the office of poundmaster can be put in operation. Until the necessary steps have been taken by the electors and the board, the poundmaster was without any rule of action whatever. There was no law on the subject for him to enforce, and it was incumbent upon him to await such action by the electors, and board before there was any official duty for him to perform.

[7] Counsel for respondent urges that: "Under the common law, which is in force in this state on all subjects as to which there is no statutory legislation, Eberhard had the right to distrain plaintiff's cattle and deliver them to the poundkeeper for detention." This proposition of law is correct; but it is not applicable to the case at bar, for the matter of distraining animals for trespass upon the lands of others than their owners has been the subject of statutory legislation since the very earliest territorial days. It is also urged by respondent that the defendant, as poundkeeper, had the right to impound these cattle independently of any ordinance or regulation that might be passed by the electors of the township, and that the power enumerated in section 1008, "to make all rules and regulations for impounding of animals," confers no power on the township to create any right to impound; that it merely gives the power to regulate the manner of impounding. But the mere fact that they are empowered to make rules and regulations for the impounding of animals carries with it the implication that it is necessary to make such rules and regulations, and that, until they are made, the poundmaster is without any guide as to when or under what conditions trespassing stock is, to be impounded.

[8] Chapter 244 of the Laws of 1907 is relied upon by Eberhard as authority for distraining cattle trespassing on his land. In this contention the respondent is correct. If the facts relied upon are such as to bring him within the scope of the provisions of this law then it would not only be authority for distraining trespassing stock, but it would also furnish him with a complete, and, we believe, his only remedy in the premises. Prior to the taking effect of this law, chapter 244, Laws of 1907, the territory comprising Stanley county was a part of the range country, and known as "Open Range." Cattle were allowed to roam at will, and, unless they trespassed upon premises inclosed by a legal fence, their own-

er was not liable for damages occasioned by their trespassing. The acts complained of by Eberhard in this case would have constituted no cause of action in his favor against the plaintiff; and it was to afford a remedy for just such cases as this that this law was enacted. It was especially framed to afford speedy and inexpensive relief. The person suffering the injury has but to notify the owner, or person having charge of the offending animals, of the damage and its probable amount. He may then, any time within 60 days, bring suit in any court in the county, and, if he can establish any damage, judgment will be entered therefor, and no property belonging to the owner of the offending animals, except such as is by law made absolute, is exempt from execution and sale in satisfaction of such judgment. The law goes further, and permits the injured party, where he finds the stock trespassing upon his premises, to *retain and keep in custody* such offending animals, and gives him a lien thereon for the amount of his damage and the expenses incurred in detaining and caring for the same. Prior to the taking of effect of this act, Stanley county being in the Open Range country, and, in townships where the town boards had taken no action to put the pound law into operation there was no remedy in cases of this kind. This law provided a remedy in such cases.

[9] We might rest the case here, but another proposition has been presented that will have to be determined by this court, sooner or later, and we will dispose of it now: Plaintiff, in addition to alleging the wrongful detention of his cattle, pleaded special damage caused by such detention, and especially the manner in which they had been cared for. The evidence establishes the fact that the cattle were taken between sections 3 and 9 on the north side of the township, and driven to the S. E. ¼ of section 33 on the south boundary of the township, a distance of more than four miles by straight line. There they were inclosed in a corral—98 of them—four rods wide by six rods long. It contained no mangers nor racks in which to feed them, and the only means of supplying them with water was a trough, not to exceed 12 feet long and 10 to 12 inches in height and width. The weather was very hot. The feed given them was hay, the quality of which was differently described by different witnesses as being every grade between "old, black, rotten hay," and "nice, bright, green hay." At best, it was ordinary wild hay that had been cut during the summer of the pre-

vious year. Defendant testified that the cattle were given all they wanted to eat and drink, but the undisputed evidence showed that, when they were released they were in a gaunt, half-starved condition, and famishing for water, that two of them died from the effects of the confinement, and that plaintiff was materially damaged by reason of defendant's improper treatment of the cattle. But at the close of the trial the court took from the consideration of the jury any damages claimed to have been inflicted on plaintiff's cattle by reason of improper care while in defendant's possession. This is assigned as error, and from the manner in which it is discussed by counsel in their briefs it appears to have been done upon the theory that the plaintiff could not recover damages resulting from the mistreatment of his cattle in this action. In other words, that this was a separate cause of action, not caused by the wrongful taking or detention, and that could not be joined with a cause of action based upon the wrongful taking or detention of personal property. This requires a construction of subdivision 6 of section 144, Code of Civil Procedure. This section prescribes what causes of action may be joined in the same suit, and subdivision 6 reads as follows: "Claims to recover personal property, with or without damages for the withholding thereof." The court drew a distinction between damages occasioned to the plaintiff by reason of being deprived of the possession or use of his property and damages occasioned by injury to his property while wrongfully in the possession of the defendant. The first class would apply to such property, and probably to such property only, as had some usable value, while the latter class would apply to any property, the value of which had been allowed to deteriorate while in the wrongdoer's possession, either by reason of his maltreatment or lack of protection or care. There may be a distinction between the two classes of injury, but it is a fine one, and one more of construction of the statute than of real substance. It depends upon whether the statute in question is to be given a liberal construction or a strict and narrow construction. Possibly either construction can be applied without doing violence to the statute, but we do not believe that it was the intention of the makers of the law that it should be so limited in its scope as to require a party who was compelled to bring an action at law for the recovery of his own property to then bring another and separate

action to recover for damages occasioned by injury caused to his property by the wrongdoer. This appears to be the course pursued by the courts of other states in similar cases,. and it is supported by both reason and the weight of authority. 4 Cyc. 1564, citing cases from a large number of states, where recovery of personal property and damages caused by the depreciation in the value of the property during its wrongful detention was allowed in the same action.

It follows that the judgment of the trial court must be reversed, and the case remanded for a new trial, in conformity with the views herein expressed.