F. T. ATKINS v. J. M. CRUMPLER, et al.

*Mortgage—Power of Sale—Compliance with Power—Trial.*

1. The attempted sale of land under a mortgage by the heir of the mortgagee is without authority and conveys no estate, though it seems that the purchaser at such sale, if acting in good faith, may be subrogated to the rights of the mortgagee.

2. The sale of land under a power contained in a mortgage, in order to be valid must be made in strict compliance with the terms of the power, and must be openly and fairly conducted.

3. Plaintiff claimed to have bought the land at a sale under a power contained in a mortgage executed by seven of ten tenants in common to L., whose son and heir assumed to exercise the power of sale. Subsequently, two of the said seven, together with the other three tenants in common who did not join in the mortgage to L., executed a mortgage to J., cashier of a banking association, (unincorporated,) to secure a note to said association. F. subsequently became cashier of the association, and he sold the land under the said mortgage to F., and plaintiff became the purchaser. Thereupon five of the tenants in common (four of whom signed the note and mortgage to J.) executed a bond to plaintiff by which they agreed to surrender possession of the land in default of the payment of a specified sum within a certain time. In an action to foreclose the last-named instrument the defendants alleged fraud, that plaintiff had received the benefit of the proceeds of the note executed to J., and that they were not and had never been indebted to plaintiff, except on a prior note, which was usurious and had been fully paid; *Held*, that the court erred in refusing to admit evidence tending to sustain such defense.

CIVIL ACTION, tried at October Term, 1895, of SAMPSON Superior Court, before *Graham, J.*, and a jury.

It was admitted that prior to May 30, 1873, Irvin Owens was the owner in fee of the land described in the complaint, and that he died prior to that date, leaving E. J. Hobbs and the other heirs and the husbands of such as are married defendants in this action. By consent, the following issue was submitted to the jury: "Are the defendants, J. M. Crumpler, O. W. Owens, J. R. Owens, T. J. Owens and W. R. Owens, indebted to plaintiff, and, if so, in what amount? Ans. $1,213,85, with interest, less $35, credit." It was admitted that on May 30, 1873, W. H. Hobbs and wife, Eliza, J. M. Crumpler and wife, Virginia, T. Fisher and wife, Elizabeth, O. W. Owens, M. M. Owens, M. N. Owens, and J. R. Owens, conveyed the land to T. M. Lee, by mortgage, with power of sale; that there was a default in the same, and the land was sold

thereunder, and conveyed to plaintiff. Plaintiff introduced
a note, dated February 10, 1887, for $1,115, to A. F. John-
son, cashier of the Clinton Loan Association, which was
secured by a mortgage upon the land, of even date with
the note. The note and mortgage were executed by T. J.
Owens, W. R. Owens, Julia J. Owens, J. M. Crump-
ler and wife, J. R. Owens, and Lola Owens, and was
endorsed by F. T. Atkins. The mortgage authorized
Johnson or his assigns to sell the land in default of
payment of the debt secured. It was admitted that
the Clinton Loan Association was an unincorporated
joint-stock company, and that, under the articles
between the members of said association, the title to
all the property was held by the cashier. It was also
admitted that Johnson was cashier at the time of the exe-
cution of the note and mortgage, and was succeeded as
such cashier by W. L. Faison. Plaintiff offered a deed
from Johnson, cashier, to Faison, cashier, which trans-
ferred and conveyed the note and mortgage. Defendants
objected, on the ground that the association was a part-
nership, and that Johnson, cashier, one of the partners,
could not convey alone. Objection overruled, and defend-
ants excepted. The land was sold under the mortgage by
Faison, cashier, and Atkins, the plaintiff, became the pur-
chaser, at the price of $1,213.85. Plaintiff offered the
deed from Faison, cashier, to plaintiff, conveying the land
in pursuance of the sale, of date January 30, 1890.
Defendants objected, on the ground that Faison, cashier,
had no power to sell the land and make title to the pur-
chaser. Objection overruled, and defendants excepted.
Plaintiff also introduced in evidence a bond for title,
dated February 1, 1889, by which plaintiff agreed to con-
vey the land to J. M. Crumpler, O. W. Owens, J. R.
Owens, T. J. Owens, and W. R. Owens, upon payment to

him of $1,213.85, with 8 per cent. interest from January 9, 1889, which sum the parties agreed to pay, upon which amount the plaintiff admitted had been paid the sum of $15 March 14, 1892, and $20 March 1, 1892. Defendants offered in evidence a bond for title conveying the land from Atkins (January 3, 1882) to the same defendants to whom the bond for title of January 9, 1889, above referred to, was given. Objected to by plaintiff; objection sustained; and defendants excepted. Defendants offered in evidence a note for $640.67, dated January 30, 1882, bearing 12½ per cent. interest, from the defendants, (who executed the note and mortgage to Johnson, cashier,) to T. F. Atkins. Objected to by plaintiff; objection sustained, and defendants excepted. Defendants offered in evidence a judgment rendered in this action at February term, 1894. It was admitted that this judgment was subsequently set aside. Plaintiff objected; objection sustained; and defendants excepted. Defendants offered one of the defendants, O. W. Owens, (he being the same Owens who is a party to the bond for title, of date February 9, 1889,) and offered to show by him that plaintiff received all the money on the note and mortgage of February 10, 1887. Plaintiff objected; objection sustained; defendants excepted. A. M. Lee was introduced as a witness for defendants, and testified that he had been a member of said association, but did not know whether he got his stock before or after 1887, and did not know when Atkins became a member of the association. Under instructions of the court, the jury rendered a verdict for plaintiff, according to the allegations of the complaint, upon which the following judgment was rendered : " It is adjudged that plaintiff recover of the defendants J. M. Crumpler, O. W. Owens, J. R. Owens, T. J. Owens, and W. R. Owens, $1,213.85, with 8 per cent. interest from January 9, 1889, subject to credits of $15 March

14, 1892, and $20 March 1, 1893, until paid; and that he recover of said defendants and of the defendants W. W. Hobbs and wife, T. Fisher and wife, Martha M. Owens, Mary N. Owens, Virginia C. Crumpler, Julia J. Crumpler and Lola M. Owens, the costs of this action.    It is further adjudged that J. S. Bizzell, heretofore appointed receiver in this action, report the proceeds of the rents and profits of the land described in the complaint; and that the land described in the pleadings and mortgages in the case known as the 'Irvin Owens Land' be condemned to be sold to pay the judgment herein recorded for the plaintiff and Henry E. Faison is now appointed commissioner to make such sale.    Defendants are allowed ninety days within which to pay said judgment and costs, and, if the same is not paid within that time, the said commissioner is ordered to make sale by public auction at the courthouse door in Clinton, for cash, after advertisement according to law, and report his proceeding to court; and the plaintiff is allowed to become the purchaser at said sale, or bid for the land; and that this cause be retained. [Signed] A. W. Graham, Judge."    Defendant excepted to the issue above submitted to the jury, and appealed from the judgment rendered upon the verdict.

*Messrs. Allen & Dortch* and *H. E. Faison,* for plaintiff.
*Mr. J. D. Kerr,* for defendants (appellants).

FURCHES, J.:    Defendants are the heirs of Irvin Owens, who died some time before 1873, and the lands in controversy descended to them as his heirs-at-law.    After the death of their father, Irvin Owens, and in May, 1873, a part of the defendants executed their note and a mortgage on the land to one T. M. Lee to secure a debt the said Owens owed to said Lee before Owens' death.    After this, T. M. Lee died, and the debt and mortgage by some means

ATKINS v. CRUMPLER.

got into the hands of T. J. Lee, and some time afterwards, and, as it appears, about the last of January, 1882, the plaintiff, as he alleges, became the purchaser of the land at a sale made by T. J. Lee, under a power contained in the deed to his father, and, as defendants allege, the plaintiff purchased the note and mortgage from T. J. Lee which defendants had given his father. And on the same day the plaintiff bargained and sold the land to a part of the defendants for $640.67, taking their note for that amount, with interest at the rate of 12½ per cent., and executed his bond obligating himself to make a good deed in fee-simple with warranty upon the payment of the note. Defendants made several payments upon this note before February, 1889, which, they say, paid the note in full; this the plaintiff denies. But however this may be, it seems that on the 16th of February, 1887, seven of the defendants executed a note under seal to A. F. Johnson, as cashier of the Clinton Loan Association, for $1,100, which, it is said, the plaintiff endorsed, (though this does not appear on the copy of the note in the record,) and defendants executed a mortgage to Johnson as cashier upon this land to secure this note. It is said that plaintiff paid this note, and afterwards Johnson resigned his position as cashier, and one W. L. Faison was elected in his stead. Johnson executed a general deed to Faison, in which he undertook to convey and assign to him all the assets and effects of said association, consisting of notes and mortgages, &c. Some time after this assignment, (the date not given, nor copy of deed furnished,) Faison, under the authority contained in the mortgage from defendant to Johnson, sold the land in dispute and the plaintiff became the purchaser. The Clinton Loan Association was a partnership and not a corporation, and the plaintiff was a member of the partnership. The $1,100 note given

by defendants to Johnson, cashier, has endorsed on it the following payments: "Received interest for ninety days from May 18, 1887. Received $40 from Thomas Owens on within March 10, 1888. (Signed) F. T. Atkins."

Defendants in their answer allege usury and fraud on the part of the plaintiff, and that the $1,100 for which the note and mortgage were given to the Clinton Loan Association was for the benefit of plaintiff, and not for their benefit, and they never received a dollar of the money. And defendants say if they owe the plaintiff anything (which they deny) it is only what may be still due on the $640.67 without interest, or, if with interest, then only lawful interest, six per cent., should be allowed. And they deny that plaintiff has a good title to the land and that he would be able to make them a good title if they pay the balance of the $640.67 note, if anything remains due thereon.

It will be noted that only a part of the heirs of Irvin Owens signed the note or joined in the mortgage to T. M. Lee; and that they did not all join in the note and mortgage to Johnson, cashier.

The plaintiff does not have and never has had a good and indefeasible title to this land. If the mortgage to T. M. Lee had been properly foreclosed under the power of sale, it could only have conveyed seven-tenths of the land, as only seven of the ten heirs of Irvin Owens executed the mortgage.

If plaintiff only purchased this debt and mortgage, as defendants say he did, he would then be the equitable owner and occupy a position similar to that of a mortgagee without the power of sale. If T. J. Lee undertook to sell and foreclose under the power in the mortgage to his father, such sale was without authority and did not convey the estate. *Dameron v. Eskridge*, 104 N. C. 621;

*Strauss* v. *B. & L. A.*, at this Term. If plaintiff purchased in good faith at such sale, and his money has been applied *bona fide* to the payment of the debt of those who executed the note and mortgage, it may be that he may be subrogated to the rights of the mortgagee. But, as the makers of this mortgage were the owners of seven-tenths of this land, upon a satisfaction of the mortgage they again became both the legal and equitable owners without any reconveyance from plaintiff or any one else.

Having considered the mortgage to Lee, we will now consider the mortgage to Johnson, cashier. And defendants had the right to execute a mortgage to Johnson in 1889 for this land, which would be a second mortgage as to those who had executed the Lee mortgage. But, if it was made for the plaintiff's benefit and he got the money, as is alleged by defendant, no court exercising equitable jurisdiction will allow him to have the land sold, buy it in, then dispossess the defendants and take their land.

But, leaving out of view for the present the question of fraud and usury, we find the same difficulty in the regularity of the sale made by Faison which we found in the sale made by T. J. Lee if he sold as plaintiff alleges. " Courts watch with jealousy the foreclosure of mortgages under powers of sale contained in them." *Dameron* v. *Eskridge, supra.* We do not say, nor mean to say, that a mortgage cannot be foreclosed by the mortgagee under a power of sale contained in the mortgage. But we say it must be done openly, fairly, and in compliance with the terms of the power.

The original debt of plaintiff was only $640.67, evidenced by a note with usurious interest at the rate of 12½ per cent. There had been a number of payments made on this note, and no other transaction or cause of indebtedness is shown between plaintiff and defendants since

the execution of that note, and defendants say there are no others. And we find in the transcript of record a bond for $1,213.85 to plaintiff signed by J. M. Crumpler, O. W. Owens, J. R. Owens, T. J. Owens (who signs with his mark) and W. R. Owens, dated February 1, 1889, in which said defendants promise to surrender possession to plaintiffs on January 1, 1890 " unless the sum of six hundred and forty dollars is paid to the plaintiff before the first day of Janauary, 1890." It seems significant to us that the bond should be for $1,213.85, but $640 *must be paid* by the first day of January, 1890, or defendants must surrender possession.

But, as we have seen, the defendants allege fraud and usury—that they owe plaintiff nothing unless it be on the $640 note—and that the note and mortgage to the Clinton Loan Association was for the benefit of the plaintiff, and that he got the money, and not defendants. And as evidence to show the amount of the indebtedness and usury, the defendants offered in evidence the note they gave the plaintiff on the first of January, 1882, for $640.67, with interest at 12½ per cent. This was objected to by plaintiff, excluded by the court, and defendants excepted. In this there was error.

Defendants introduced O. W. Owens as a witness, he being one of the parties who executed the note and mortgage to the Clinton Loan Association, and proposed to prove by him that the note and mortgage were made for the benefit of plaintiff, and that he got the money, and not the defendants. This evidence was objected to by plaintiff, excluded by the court, and defendants excepted. In this ruling there was error. There were other exceptions which have not been considered, as they will likely not arise on another trial. But the errors stated above entitle the defendants to a new trial.

ATKINS *v.* CRUMPLER.

Upon the new trial, the court will frame and submit such issues as may be necessary to determine whether defendants owe plaintiff anything, or for any other consideration except the $640.67 note dated January 31, 1882 ; and whether the plaintiff got the benefit of the $1,100 note made payable to the Clinton Loan Association. If he did, although he may have afterwards paid the money back to the association, he will be entitled to no benefit from that transaction. And this brings us back to the first proposition, Do the defendants owe plaintiff for anything outside of the $640.67 note, and if so, for what ?  In determining the defendants' indebtedness, the $640.67 note will be taken as the basis of that indebtedness, to be credited with all payments they have made thereon. As plaintiff has charged defendants usurious interest, $(12\frac{1}{2}\%,)$ we do not allow him any interest on the $640.67 note. *Moore* v. *Beaman*, 112 N. C., 558. There is error, and a new trial is ordered.

Error.

AVERY, J. : I concur in the conclusion that a new trial should be granted to the defendants, but not in all of the reasoning of the Court by which that conclusion is reached.