A. E. PUGH, Dennis Wright, C. O. Ingram, Trustee, James D. Jones and Doris Jones Realty Company, Appellants, v. JAMES RICHMOND, JR., Douglas Gilmore, Van Gilmore, S. Rondall Page, Carolyn R. Page, James B. Turner, Trustee, and Provident Trust Company, Appellees.—425 S.W.(2d) 789.

Middle Section. December 1, 1967.

Certiorari Denied by Supreme Court March 18, 1968.

Suit was brought to set aside as invalid foreclosure sale under combination deed and trust deed. The Chancery Court, Sumner County, W. M. Leech, Chancellor, entered a decree in favor of the complainants, and the defendants appealed. The Court of Appeals, Puryear, J., held that where because of mistake combination deed and trust deed provided for advertisement and foreclosure sale in Davidson County instead of Sumner County where realty was located, and mortgage foreclosure sale was conducted in front of closed and locked doors of Davidson County courthouse, and $60,000 worth of realty was sold for $32,000, evidence sustained finding of Chancellor that sale was unfair and inequitable and should be set aside.

Gullett, Steele, Sanford & White, Nashville, for appellants.

Cornelius, Collins, Neal & Higgins, Nashville, and James M. Hunter, Gallatin, for appellees Provident Trust Co., James B. Turner, Trustee, Van Gilmore, S. Rondall Page and Carolyn R. Page.

C. Allen High, Nashville, for appellees James Richmond, Jr., and Douglas Gilmore.

PURYEAR, J. For the sake of convenience in this complex case we will refer to the parties as they appeared in the Court below, wherein James Richmond, Jr., Douglas Gilmore, Van Gilmore, S. Rondall Page, Carolyn R. Page, James B. Turner, Trustee, and Provident Trust Company, were complainants and A. E. Pugh, Dennis Wright, C. O. Ingram, Trustee, James D. Jones and Doris Jones Realty Company were defendants.

We find an accurate statement of the case contained in the Chancellor's memorandum opinion and also in the defendants' brief and we will closely follow these statements in briefly reciting the facts of the case in this opinion.

In August, 1963, the complainants, James Richmond, Jr., and Douglas Gilmore purchased from the defendants, A. E. Pugh and Dennis Wright eighteen lots, same being Lots numbers two through fourteen and Lots seventeen through twenty-one, inclusive, Twin Bay Subdivision in Sumner County, Tennessee.

The purchase price was $56,000.00 of which $15,000.00 was paid in cash and for the balance of $41,000.00, Richmond and Gilmore executed a promissory note payable only to the grantor, A. E. Pugh, for the principal sum of $41,000.00.

The deed of conveyance, which is dated August 15, 1963, is a combination deed and trust deed in which a

lien was retained on the property therein conveyed for the purpose of securing payment of deferred purchase money of $41,000.00 and, under the trust provisions of such trust deed, Richmond and Gilmore conveyed the property to C. O. Ingram, Trustee, for the purpose of securing the payment of the deferred purchase money.

There was a contract made between the parties which was incorporated into this deed and this contract made provisions for the release of lots from time to time upon certain terms and conditions stated as follows:

"Seller agrees to release such lots as the buyer may from time to time request upon the following terms:

(Here follows a schedule of lots and the value of each lot as agreed upon, and provided for payment of one-half the value of each lot in cash and the execution by Richmond and Gilmore of a 90 day note for the other half).

The above mentioned 90 day notes are to be jointly and severally executed by the buyers and are to bear interest at the rate of 6% per annum. Said notes are to be secured by a second deed of trust.

Buyer agrees that on or before each six-month anniversary of the execution of the deed of conveyance to pay to seller an amount of cash necessary to release four (4) lots as per above Schedule. Seller will not execute further releases while any 90 day note is unpaid.

It is further agreed and understood by and between the seller and buyer, that the terms of this contract with reference to the release of Lots is to be incorporated into the deed of conveyance by reference."
(Tec.Rec. pp. 55, 56)

Lots 5, 7, 18, 19 and 21 were released upon the date of execution of this deed in accordance with a provision in the contract for the release of five ''off lake'' lots and no value was placed on these lots.

Thereafter, from time to time, Richmond and Gilmore secured separate releases for Lots 3, 4, 6, 9, 12, 17 and 20 and on the occasion of each release, they made a cash payment and executed the 90 day note required by the contract and they apparently built houses on these released lots or sold them or secured construction loans on them. However, one of the checks they gave Pugh for a cash payment was returned by the bank upon which it was drawn because of insufficient funds.

This left lots 2, 8, 10, 11, 13 and 14 unreleased from the vendor's lien retained in the aforesaid deed from Wright and Pugh to Richmond and Gilmore.

Some time in March or April, 1963, Richmond and Gilmore commenced construction of houses on Lots 11 and 14 and secured for themselves a loan from Provident Trust Company, on Lot 11 and executed a deed of trust to James B. Turner, Trustee, to secure this loan, which was in the principal amount of $17,000.00. Thereafter, Richmond and Gilmore conveyed Lot No. 14 to S. Rondall Page and wife, Carolyn R. Page, and the Pages also obtained a loan from Provident Trust Company in the sum of $19,000.00 and executed a deed of trust to James B. Turner Trustee, for the purpose of securing payment of this loan.

At the time of making these loans, Provident Trust Company secured title insurance on Lots 11 and 14 from Guaranty Title Company, of Nashville, Tennessee. The person who examined the title for Guaranty Title Com-

pany overlooked the fact that these two lots had not been released from the vendor's lien retained by Pugh. Therefore, the deeds of trust which Provident Trust Company had upon these lots to secure the payment of their loans were secondary to the lien retained by Pugh upon these lots and others conveyed in the deed from Wright and Pugh to Richmond and Gilmore, but the fact that their deeds of trusts were secondary to that of Pugh was not at that time known by Provident.

The proceeds of these two loans on Lots 11 and 14 were used for the purpose of constructing houses thereon, but the houses had not been completed at the time of the foreclosure sales which brought about the filing of this suit.

Richmond and Gilmore defaulted upon payment of their obligation to Provident Trust Company and also upon payment of their obligation to Pugh. Provident Trust Company proceeded to foreclose its deed of trust on Lot 11 and advertised the foreclosure sale to be held at the court house in Gallatin on October 23, 1964.

At about this same time, Pugh instructed Wright, who is an attorney, to proceed with foreclosure on all of the lots, including 11 and 14, which had not been released from the vendor's lien to secure the deferred purchase money to him, which at that time was approximately $26,000.00.

On October 21, 1964, Mr. Wright went to the court house at Gallatin to check the status of title of the lots upon which Pugh had instructed him to foreclose. He was accompanied on this trip by Mr. Clarence Ingram, who was designated as trustee in the deed from Wright and Pugh to Richmond and Gilmore. While in Gallatin

on that occasion, Wright discovered for the first time that Richmond and Gilmore had executed a deed of trust on Lot 11 to Provident Trust Company and had conveyed Lot 14 to the Pages, who in turn had executed a deed of trust to Provident Trust Company. Before leaving Gallatin, Wright and Ingram also discovered for the first time that Provident had advertised and was conducting a foreclosure sale on Lot 11 to be held in Gallatin on October 23, 1964.

Prior to that time, Wright and Ingram had advertised all of the lots unreleased from Pugh's lien in the Nashville Record and they were proceeding to foreclose Pugh's deed of trust by selling the property, including Lots 11 and 14 at the court house in Davidson County, Tennessee, on Saturday, October 24, 1964.

It was not until Wright instituted the foreclosure proceedings that he discovered the deed of trust to secure Pugh's claim provided that the foreclosure sale was to be advertised and conducted in Davidson County instead of Sumner County, and in explaining why this was done Wright testified as follows:

"Q. Could you explain to the Court why this instrument that you prepared, why you provided for a sale of property in Sumner County in Davidson County, Tennessee?

A. The form I use was one prepared by the Davidson County Title Insurance Company, and it was printed in there as part of their standard form, and I overlooked changing it to Sumner County." (B. of E. p. 167, Vol. 1)

When Richmond and Gilmore heard of the unfortunate predicament in which they found themselves, they be-

came quite disturbed over it and they insist that they thought Lots 11 and 14 had been released from the obligation of Pugh's lien and testified that they paid him a certain sum of money for which he agreed to release these two lots, but this is denied by Pugh and the Chancellor resolved this issue against the contention of Richmond and Gilmore.

Upon learning that its deeds of trusts were secondary to the lien of Pugh, Mr. James B. Turner, the owner of Provident Trust Company immediately contacted Guaranty Title Company and conferred with the president of the title company, Mr. William O. Lee. Upon Pugh and Wright learning of the foreclosure sale to be conducted in Gallatin by Provident, they, together with the defendant Jones, attended the sale in Gallatin on October 23, 1964, but did not bid on Lot 11, which was purchased at such sale by Provident for the sum of $18,208.49 and conveyed by the trustee, James B. Turner, to Van Gilmore, who is not related to the complainant, Douglas C. Gilmore.

Also attending the sale at Gallatin on October 23, 1964, was Mr. William O. Lee, of Guaranty Title Company, and having already confirmed the fact that Pugh's lien was superior to that of Provident, he inquired of the defendant Wright how much money would be required to obtain release of Lots 11 and 14, to which Wright replied $10,500.00, whereupon Lee stated, ''I'll pay it.''

This offer was apparently made by Lee on behalf of Guaranty Title Company for the purpose of protecting its insured, Provident Trust Company, against loss. Defendant Wright then conferred separately with Pugh and later informed Lee that Pugh would not accept

$10,500.00, but would require payment of the entire balance of approximately $26,000.00 due him, plus expense of sale, attorney's fee to Wright and trustee's fee to Ingram, which amount Lee declined to pay.

Mr. Lee thereupon employed Mr. James M. Hunter, an attorney at Gallatin, to commence preparation of a suit to enjoin the foreclosure sale to be conducted by Wright and Pugh if they still refused to accept his tender of $10,500.00. Lee thought that the sale to be conducted by Pugh and Wright would be held in Gallatin, since Wright had previously told him that the sale would be held on Saturday, October 24, 1964, but did not tell him that it would be held in Nashville instead of Gallatin.

At some time around noon, October 24, 1964, Lee appeared at the court house in Gallatin with a certified check in the amount of $10,500.00 and a letter of tender addressed to Pugh and Wright, but after waiting for some time, he finally learned that the property was not going to be sold in Gallatin on that date.

After returning to Nashville, Lee learned on the following Monday morning, October 26, 1964, that Pugh and Wright had conducted their foreclosure sale at the court house in Davidson County, at which sale Pugh became the purchaser of the property for the sum of $32,000.00 and title was taken in the name of Doris Jones Realty Company, upon the agreement between Pugh and Jones that the houses on Lots 11 and 14 would be finished by them and they would sell the property, sharing the profit if any. At the time of this sale the Davidson County court house was closed, except for an entrance to the Sheriff's office and Police Department on the north side thereof, but the sale was held on the south side of the building. All the money invested in the property was paid by Pugh.

Mr. Robert Zeigler, an attorney representing Mr. and Mrs. Page, attended the foreclosure sale at Nashville, but did not bid on the property.

Shortly thereafter, defendant Jones was asked by Mr. Lee what he would take for the entire property and he stated it was worth $60,000.00 and declined to release it for $32,000.00, which he and Pugh and Wright had bid at the foreclosure sale.

On November 7, 1964, the complainants filed suit in the Chancery Court of Davidson County to set aside the Pugh foreclosure sale. Subsequently, however, the suit in Davidson County was dismissed because of lack of jurisdiction of the Chancery Court in that County over the subject matter of the suit and the instant suit was instituted in the Chancery Court of Sumner County.

In their bill, complainants prayed for the following relief.

1. That the foreclosure sale conducted by Wright and Pugh on October 24, 1964, be set aside as to Lots Nos. 11 and 14 and a decree be entered requiring Wright and Pugh to specifically perform an alleged contract to release Pugh's lien on Lots 11 and 14, tendering $10,500.00 or such other sum as may be found by the Court to be due under the contract incorporated into the installment deed for the release of said lots.

2. That the entire foreclosure sale conducted by Wright and Pugh be set aside if the Court concluded that complainants were not entitled to the release of Lots 11 and 14, tendering the full balance of Pugh's debt, plus reasonable fees to Wright and Ingram, attorney and trustee respectively, and prayed for releases, con-

veyances or quitclaims to effectuate the decision of the Court.

3. For certain relief regarding prior sales of the foreclosed lots.

4. That the Court adjudge the fees totalling $6,000.00 to defendants, Wright and Ingram, to be excessive and unreasonable and that the Court fix proper fees under the law and the evidence in the case.

5. For general relief.

To this bill the defendants filed a demurrer coupled with an answer, which demurrer was overruled by the Chancellor. In the answer which defendants filed along with their demurrer they admitted certain allegations of the bill, but emphatically denied that complainants Richmond and Gilmore made any payments for the release of Lots 11 and 14 or that the defendant Pugh agreed to execute any such release.

They admitted that they did not advise Mr. Lee, of Guaranty Title Company, as to the fact the foreclosure sale would be conducted in Nashville, instead of Gallatin, but denied any implication in the bill that said information was in any way withheld by them from Mr. Lee or that misrepresentation of any kind was made to him.

They denied that the defendant Wright advised Mr. Lee that Lots 11 and 14 would be released for $10,500.00. They denied that the price of $32,000.00 for which the property was sold at the Pugh foreclosure sale was grossly inadequate and aver that all of the complainants had been guilty of gross laches and, therefore, were not in a position to complain of the manner in which the foreclosure sale was conducted.

The cause was tried by the Chancellor upon oral testimony, documentary evidence and depositions, but most of the evidence was by oral testimony.

After taking the case under advisement, the Chancellor filed a memorandum opinion and entered a decree sustaining the bill and setting aside the foreclosure sale conducted by Wright and Pugh on October 24, 1964.

In his memorandum opinion, the Chancellor found and held that the first question to be decided was whether or not complainants, Richmond and Gilmore, paid to defendant, Pugh, a sum of money and received from Pugh a promise to release Lots 11 and 14, and he resolved this issue in favor of the defendants.

The Chancellor found that the property sold at the foreclosure sale for $32,000.00 was worth between $50,000.00 and $60,000.00 and although this, within itself was not so inadequate as to justify setting aside the sale, a consideration of this fact together with other facts and circumstances, showed that it would be unjust and inequitable under such facts and circumstances to allow the foreclosure sale to be upheld.

One of such other facts and circumstances which the Chancellor mentioned in his opinion which was taken into consideration by him was that the provision in the deed from Pugh to Richmond and Gilmore for foreclosure sale to be advertised and held in Davidson County, was not by mutual agreement, but because of a mistake made by the defendant, Wright.

The Chancellor further held that the fees of $4,000.00 charged by Wright for the foreclosure and $1,600.00 charged by Ingram, as trustee, were excessive and that a fee of $2,619.59 to Wright would be adequate, but he

did not fix any specific amount to be paid to Ingram for his services as trustee, the question of the amount of such trustee's fee being reserved for determination until after a resale of the property.

Prior to the trial of the case, some of the property involved in the foreclosure sale had been resold by agreement of the parties, without prejudice to the rights of any of them and the proceeds of such sales paid into the registry of the Chancery Court, to be held there subject to the orders of the Court in lieu of the property from the sale of which such proceeds were derived.

A decree was entered in accordance with the memorandum opinion and in such decree, the Chancellor ordered that the defendant Ingram, as trustee, or his successor, be ordered to re-advertise the sale of the lots which had not already been sold by agreement of the parties, these unsold parcels being 8, 10, and 11. Lot No. 14 was one of the lots previously sold by agreement of the parties for which the sum of $19,631.68 had been realized and paid into the registry of the Court.

In such decree, the Chancellor ordered the funds in the hands of the Clerk and Master and such funds thereafter to come into his hands from sale of the property be disbursed as follows:

"It further appearing to the Court that there is presently in the hands of the Clerk & Master the sum of $19,631.68 representing the proceeds of the sale of Lot 14, it is

ORDERED, ADJUDGED AND DECREED that the Clerk & Master shall, in the order hereinafter set forth, make the following disbursements out of the funds in his hands or coming into his hands in this cause;

(1) To A. E. Pugh—The balance due upon the indebtedness described in the pleadings and shown by the proof to be $26,195.91, less the sum of $3,024.65, representing the proceeds of the sale of Lot 2, or a balance of $23,108.41, plus an attorney's fee of 10% of the original balance, or $2,619.59, making a total of $25,790.85.

(2) To Dorris Jones Realty Company the balance due on a loan which was obtained by it from the Bank of Goodlettsville as agent of all the parties to this cause in the amount of $3,724.48, plus accrued interest at 6% per annum through the date of disbursement of said sum to him and plus the sum of $372.49 representing his 10% agreed compensation for finishing the house on Lot 14, and plus accrued utility bills through the date of disbursement to be established by him by a sworn statement filed with the Clerk & Master, out of which the said Dorris Jones Realty Company shall pay and discharge the balance due upon said loan at the Bank of Goodlettsville, Goodlettsville, Tennessee, together with interest thereon.

(3) The balance to complainant, Provident Trust Company, in satisfaction of it's liens, the excess, if any, to complainants Gilmore and Richmond.'' (Tec.Rec. pp. 67, 68)

From the foregoing decree, the defendants have prayed and perfected their appeal to this Court and filed three assignments of error as follows:

''I

The Court erred in finding the parties had made a mutual mistake of fact in providing in the deed of trust for the foreclosure sale to be held in Davidson

County, in holding the sale invalid under T.C.A. 35-501, and in setting aside the sale on this ground.

## II

The Court erred in overruling Appellants' demurrer which challenged the standing of Appellees to obtain the relief sought and in granting relief to certain complainants.

## III

The Court erred in setting aside the foreclosure sale and ordering a resale of the property in Sumner County and an adjustment of attorney's and trustee's fees."

■ The most vigorous attack made upon the Chancellor's decree is in assignment of error number one. It is true, as insisted by counsel for defendants, that the Courts of this State hold that a decree in Chancery, which is beyond the scope of both the pleadings and proof is coram non judice and void, but none of the cases cited by defendants are applicable to the decree now before us.

From the Chancellor's decree and his memorandum opinion, it is obvious to us that the fact the combination deed and deed of trust from Wright and Pugh to Richmond and Gilmore provided for advertisement and foreclosure sale in Davidson County instead of Sumner, was considered along with all other facts and circumstances of the case.

■ From all of these facts and circumstances, the learned Chancellor concluded that the sale conducted in front of closed and locked doors of the Davidson County court house at 10:00 o'clock in the morning, at which $60,000.00 worth of real estate was sold for $32,000.00

was unfair and inequitable, and we think the evidence preponderates in favor of this conclusion. This conclusion is supported by the following statement in Mitchell v. Sherrell, 11 Tenn.App. 210, at pages 220 and 221:

"The general rule is that mere inadequacy of price does not in itself invalidate or affect the sale, otherwise properly conducted unless it is so great as to shock the conscience of the court; and a court will be particularly inclined to set the sale aside when in addition to inadequacy of price other circumstances exist rendering it inequitable for the sale to stand."

\* \* \* \* \* \*

"Because sales by mortgagees under powers are much liable to abuse, they are most jealously watched by courts of equity, and upon slight proof of unfair conduct they will be set aside." Mitchell v. Sherrell, supra, pp. 220, 221.

The granting of equitable relief upon a finding of unfairness is also supported by the following statement from C.J.S.:

"Inadequacy of price is, however, always a circumstance to be considered in connection with other grounds of objection to the sale, and may be sufficient to justify setting the sale aside, when coupled with other circumstances showing unfairness, misconduct, fraud, or even stupid management resulting in the sacrifice of the property; but the irregularity coupled with inadequacy which will authorize setting the sale aside must be related to the inadequacy, or must in some other way have contributed to the injury of the debtor." Vol. 59 C.J.S. Mortgages sec. 601(2), p. 1056.

The provision in the decree for a resale of the property in Sumner County instead of Davidson County does not necessarily lend support to the insistence that relief to the complainants was granted upon the theory of a mutual mistake. This provision of the decree is well within the broad powers of a court of equity to do complete justice to all parties.

Apparently, the Chancellor concluded, as we have, that Sumner County real estate is likely to bring a better price when sold at auction in Sumner County, than it would if sold at auction in Davidson County.

We do not mean to say that we think the sale was illegal because it was advertised and conducted in Davidson rather than Sumner County, because this can be done by the contract of the parties. (T.C.A. Sec. 35-501)

All of the defendants who have a financial interest in the property are adequately protected by provisions of the decree. Pugh, Wright and Jones are not likely to lose anything by a resale of the property under the provisions of the decree, with the possible exception however, of the hope to make a profit as a result of the foreclosure sale which was held in Davidson County.

We do not find any merit in the defendants' contention that the complainants should be denied the relief sought because of laches.

We have considered all of the authorities cited by defendants in support of this assignment and find all of them inapplicable. The cases cited are all distinguishable from the case at bar.

In assignment of error number two, appellants insist that under the allegations of the bill, appellees do not

show that they have a relationship cognizable in law or equity with appellants which gives rise to a duty on the part of the defendants to them, a breach of their duty and a resultant injury.

In support of their insistence that Richmond and Gilmore do not have such an interest in the subject matter of the litigation as to give them a right of action, the defendants point to the following paragraph in the Chancellor's memorandum opinion:

"In passing, I might say that insofar as between Richmond and Gilmore as complainants and the defendants there would be no relief granted, because the proof shows that Richmond and Gilmore knew they were in default and they had been contacted about paying and the preponderance of the proof is that they knew about the foreclosure." (P. 60, Tec.Rec.)

We think counsel for the defendants must have misinterpreted the Chancellor's decree in this respect, because by his decree, he did grant relief to Richmond and Gilmore by ordering a resale of the property in question here and ordering a disposition of the proceedings, including the following:

"The balance to complainant, Provident Trust Company, in satisfaction of its liens, *the excess, if any, to complainants Gilmore and Richmond.* (emphasis supplied) (Tec.Rec. p. 68)

Naturally, if the foreclosure sale which has been challenged in this case should be upheld, there would be no excess of proceeds payable to Richmond and Gilmore.

There is still another reason why Richmond and Gilmore have such privity of interest with the complainants

in the subject matter of this litigation as gives them a right to maintain this suit. The deed from Richmond and Gilmore to the Pages contains covenants of general warranty against encumbrances, and likewise, the deed of trust from Richmond and Gilmore to James B. Turner, Trustee, conveying Lot No. 11 to secure the loan of Provident Trust Company made on that lot, also contains covenants of general warranty against prior encumbrances.

If the foreclosure sale here should be upheld, the Pages and Provident Trust Company would suffer serious financial loss, which would give rise to rights of action against Richmond and Gilmore for breach of warranty. Certainly, therefore, they have the right to maintain this suit in order to protect themselves against liability for such breach of warranty or to minimize the loss suffered by the persons to whom they have made such warranties.

Provident Trust Company advanced in excess of $36,000.00 in the form of construction loans on Lots 11 and 14 and if the foreclosure sale in question here is upheld, Provident will sustain a substantial loss.

On this question we find the following statement in C.J.S.:

"On a showing of sufficient grounds a proceeding to set aside a foreclosure sale may be maintained in equity at the suit of a *person interested in the subject matter and whose right is affected by the sale, including the mortgagor, or those claiming under him, such as his heirs and personal representatives, or a purchaser of the equity of redemption, if injured by the sale.* Where a sale was invalid for collusion between

the trustee and the purchaser, resulting in a grossly inadequate price, the mortgagee is entitled to have the sale set aside, his remedy against the mortgagor being inadequate, even though the latter is not insolvent. *A junior lienholder* may sue to set aside an invalid sale made under a senior deed of trust.'' (emphasis supplied) Vol. 59 C.J.S. Mortgages sec. 601(A), p. 1050

█ The fact that Provident Trust had title insurance from Guaranty Title Company does not affect its right to maintain this suit. The record does not show that Provident has been paid anything by Guaranty Title Company, and even if it had been paid by the title company, this suit could be prosecuted in the name of Provident Trust Company as insured, for the use and benefit of its insuror, Guaranty Title Company. Anderson v. Miller, 96 Tenn. 35, 33 S.W. 615, 31 L.R.A. 604.

The Pages borrowed approximately $19,000.00 from Provident, for which they executed a deed of trust to James B. Turner, Trustee, to secure payment of such loan, and this deed of trust contains covenants of general warranty against prior encumbrances. In addition to the Pages having the right to file this suit to protect themselves from liability for breach of warranty, they remain liable on a note which they may be required to personally pay as result of loss sustained by Provident in the event the foreclosure sale in question here should be upheld.

█ The complainant, Van Gilmore, as purchaser of Lot 11 at the foreclosure sale conducted by Provident has an interest in the title to Lot No. 11 which makes him a necessary party complainant to this suit.

Although, all of the complainants except Richmond and Gilmore may not be, in the strictest sense of the

term, parties in privity with defendants, they are not strangers in privity with them, for the reason that they are successors in title to Richmond and Gilmore and, to the extent of their interest in the real estate, stand in their shoes, so to speak.

For the foregoing reasons we think that the rights of all the complainants to invoke the equitable process of the Chancery Court for the purposes set forth in the bill are unassailable and the second assignment of error is overruled.

In the third assignment of error, defendants insist, in effect, that the evidence preponderates against the Chancellor's decree setting aside the foreclosure sale, ordering a resale of the property in Sumner County, and holding that the attorney's fee of $4,000.00 to the defendant Wright and the trustee's fee of $1,600.00 to the defendant, Ingram, were excessive.

In our discussion of the first assignment of error, we have already stated our reasons for concluding that the evidence does not preponderate against the Chancellor's decree setting aside the foreclosure sale and it is unnecessary to repeat such reasons here.

On the question of whether or not the fee of $4,000.00 charged by Mr. Wright and the fee of $1,600.00 charged by Mr. Ingram are excessive, we have considered the testimony of Messrs. Wright, Ingram, Lee, Turner, Reau E. Folk, Ross V. Dunn and Jacobs H. Doyle.

All of the foregoing witnesses, with the exception of Mr. Lee and Mr. Turner, are attorneys, and after considering their testimony, we agree with the Chancellor that such fees are excessive and not commensurate with the services rendered.

It also appears from the testimony of Mr. Pugh (B. of E. Vol. 2, p. 116) that a portion of Mr. Wright's fee was possibly charged for services rendered by him that were not incidental to nor connected with the foreclosure sale and the collection of Pugh's debt.

This disposes of all the assignments of error and finding no merit in any of them, they are respectfully overruled.

This case was well tried in the Court below and ably briefed and argued in this Court, for which we are grateful to counsel on both sides. The decree of the Chancellor is affirmed and the cause will be remanded for further proceedings in the Chancery Court of Sumner County, Tennessee, not inconsistent with this opinion. The costs of this appeal will be paid by the defendants.

Shriver, P.J., and Todd, J., concur.