**In re Joseph F. FERRELL and Lisa C. Ferrell, Debtors.**

**Joseph F. FERRELL and Lisa C. Ferrell, Plaintiffs,**

v.

**SOUTHERN FINANCIAL, INC., Defendant.**

**Bankruptcy No. 93–33162–K. Adv. No. 94–0154.**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

March 24, 1994.

Memorandum Supplementing Decision April 5, 1994.

---

Stanley H. Less, Memphis, TN, for debtors/plaintiffs.

Roger A. Stone, Memphis, TN, for SFI.

George W. Emerson, Standing Chapter 13 Trustee, Memphis, TN.

## MEMORANDUM RE PLAINTIFFS' COMPLAINT TO SET ASIDE HOME FORECLOSURE SALE COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

In this adversary proceeding the plaintiffs, Joseph F. Ferrell and Lisa C. Ferrell, the above-named chapter 13 debtors ("Debtors"), seek to set aside a foreclosure of their home.

Pursuant to Fed.R.Bankr.P. 7012(c) the parties have requested the Bankruptcy Court for a judgment on the pleadings. Cf. Fed. R.Bankr.P. 7056. Thus, the core/non-core dichotomy under 28 U.S.C. § 157(b) and (c) is not relevant.

### *ISSUES PRESENTED*

The narrow and ultimate issue for judicial determination in this proceeding is whether or not the debtors may set aside a home foreclosure; cure the economic defaults owed to the defendant, Southern Financial, Inc. ("SFI"); and reinstate the terms of the home mortgage under section 1322(b)(5) of the Bankruptcy Code.

This Memorandum only addresses a threshold issue: When does a foreclosure sale under Tennessee law become final and consummated? That is, at what point in the non-judicial foreclosure process under Tennessee law does a foreclosure sale become final—at the time the indenture trustee accepts the highest bid at a scheduled foreclosure; upon expiration of the redemption period; upon transfer of the deed and payment of the consideration; or upon recordation of the indenture trustee's deed. In the instant proceeding the answer to this threshold question will determine whether the debtors have the right to cure their home mortgage default under the rationale of *In re Glenn,* infra, and section 1322(b)(5) of the Bankruptcy Code and thereby save their home or whether those rights have terminated?

## BACKGROUND FACTS

Based on the parties' joint stipulation of facts filed on March 14, 1994, and considering the case record as a whole, the following shall constitute the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

The relevant background facts are not in dispute and may be briefly summarized as follows: Debtors purchased their home located at 6097 Glascony Drive, Memphis, Tennessee in August 1991 for a cash price of $70,000.00. On December 1, 1992, the debtors obtained a non-purchase money loan from SFI in the amount of $20,000.00, bearing 15% annual interest, payable in monthly installments of $351.00 commencing on January 1, 1993, for a period of ten years. To secure this loan, the debtors granted SFI a first mortgage on their home.

Due to subsequent economic defaults, SFI exercised its contractual rights and commenced a foreclosure action against the debtors' home which was scheduled to be held at 12:00 o'clock noon on December 10, 1993. SFI's bid of $22,000.00 was the highest and successful bid at the non-collusive, regularly-conducted foreclosure. At approximately 4:32 p.m. on December 10, 1993, the same date as the foreclosure, the debtors filed an original section 302 petition under chapter 13 of the Bankruptcy Code accompanied with a repayment plan which proposed, inter alia, to maintain ongoing monthly contractual payments to SFI, to cure all the economic defaults and reinstate the terms of the mortgage held by SFI under section 1322(b)(5) of the Bankruptcy Code and to pay all other creditors 100% of their claims. Debtors' Schedule A herein reflects that their home has a fair market value of $72,000.00.

On December 13, 1993, without actual knowledge of the debtors' chapter 13 case, SFI's substitute indenture trustee innocently executed and registered a "Substitute Trustee's Deed" pursuant to TENN.CODE ANN. § 66–24–101.

On February 16, 1994, the debtors filed the instant complaint seeking to set aside SFI's foreclosure of their home.

## DEBTORS' POSITION

Debtors essentially contend that the subject foreclosure was not final, and therefore any interest they may have in the home was not terminated, at the time their chapter 13 case was commenced. They seek an opportunity to cure the economic defaults owed to SFI under 11 U.S.C. § 1322(b)(5); save their home; and pay all creditors 100% of their claims.

## SFI'S POSITION

SFI's position is contrawise. It contends, inter alia, that the subject foreclosure is final and that the rights of the debtors to cure the economic defaults and reinstate the home mortgage have terminated.

### 11 U.S.C. § 541(a)

11 U.S.C. § 541(a) broadly defines property of a debtor's estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

It has been said that although federal bankruptcy law determines the outer boundary of what may constitute property of the estate, State law determines the "nature of a debtor's interest" in given property. See, e.g., *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2nd Cir.1989). The Supreme Court has emphasized that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). In *Butner* the Supreme Court stated:

"Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happen-

stance of bankruptcy.' *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 [ (1961) ]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests . . . ."

*Id.* 440 U.S. at 55, 99 S.Ct. at 918. Thus, absent a countervailing federal interest, "the basic federal rule is that state law governs." *Id.* at 57, 99 S.Ct. at 919.

### IN RE GLENN

In *In re Glenn,* 760 F.2d 1428 (6th Cir. 1985), *cert. den.* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), the debtors filed a chapter 13 petition after the mortgagee had obtained a foreclosure judgment under Ohio judicial foreclosure law but before the sheriff sold the real estate. The Sixth Circuit held, inter alia, that "[o]nce the property had been sold, the right to cure the default and reinstate the terms of the mortgage under section 1322(b) ceases."

The *Glenn* decision, it appears, actually provides little guidance in the instant proceeding because here the gravamen of the concern centers around what constitutes "the [foreclosure] sale". Once it is determined when the foreclosure sale is final or consummated, if at all, then *Glenn* dictates the result.

### POWER OF SALE FORECLOSURES IN TENNESSEE

Most often real estate is financed by the mortgagor who extends a security interest in the property to be purchased in favor of the mortgagee. This is done in Tennessee with a deed of trust executed by the debtor-mortgagor to an indenture trustee who holds the property as security for the repayment of the debt. The deed of trust normally contains a provision which enables the indenture trustee to hold a foreclosure sale upon the mortgagor's failure to pay for the property. This is a non-judicial foreclosure procedure conducted pursuant to the terms agreed upon by the parties. One advantage of this arrangement over the judicially supervised foreclosure procedure is that it is far less expensive.

Tennessee statutory law governing power of sale clauses is sparse because the power of sale as recognized at early common law is basically a creature of contract between the parties. See Note, Wesley D. Turner, *"Power Of Sale Foreclosure In Tennessee",* 8 Mem.St.L.R. 871 (1978). The right to create such an agreement has been recognized at common law and only regulated to a limited degree by statute.

It has been stated that due to the high possibility of abuse under non-judicial power of sale foreclosures, such sales must be, "most jealously watched by a court of equity, and upon slight proof of unfair conduct be set aside." *Pugh v. Richmond,* 58 Tenn.App. 62, 77, 425 S.W.2d 789, 796 (1967), quoting *Mitchell v. Sherrell,* 11 Tenn.App. 210, 221 (1929). As stated in Mr. Turner's Note dealing with power of sales clauses, Tennessee's hands-off treatment of such non-judicial sales makes defaulting debtors vulnerable to unfair treatment by creditors. *Id.* at 891.

In light of the Tennessee Supreme Court's instruction in both the *Pugh* and *Sherrell* cases, non-judicial foreclosure sales should be carefully scrutinized for any wrongdoing, benevolent *or otherwise,* which might jeopardize an unfortunate debtor's position. Any cause to invalidate a power of sale foreclosure should be considered. For example, failure to satisfy the Tennessee statute of frauds has been held a valid reason to set aside a non-judicial foreclosure sale. *Watson v. McCabe,* 381 F.Supp. 1124 (D.C.M.D.Tenn. 1974). Pursuant to the statute of frauds pursuant to TENN.CODE ANN. § 29–2–101 no action shall be brought upon contracts for the sale of land unless such transaction is evidenced by a writing.

In *Watson v. McCabe,* supra, an indenture trustee brought suit seeking specific performance of a contract for sale of realty arising from a foreclosure sale conducted pursuant to the terms of the deed of trust. The United States District Court held, inter alia, the indenture trustee's filing a complaint incorporating the terms of an oral contract did not satisfy the requirements of the statute of frauds, TENN.CODE ANN. § 29–2–101, and even if it did, no written memorandum evidencing the transaction was signed by the

trustee, thus, the contract for sale could not be specifically enforced.

In *McCabe* the court noted that the transaction may be put in writing at any time after the contract and before suit is brought. *Watson v. McCabe,* 381 F.Supp. at 1129. Quoting *Hudson v. King,* 49 Tenn. 560 (1870), the *McCabe* court reasoned that the writing must contain the essential terms of the contract with sufficient certainty to show the intention of the parties without resorting to parol evidence. *Watson v. McCabe,* 381 F.Supp. at 1130. See *Fortner v. Wilkinson,* 210 Tenn. 201, 357 S.W.2d 63 (1962) (holding that the sale of land by a trustee under authority of trust deed is within purview of statute of frauds). See also *Jameson v. Kimbrough,* 209 Tenn. 519, 354 S.W.2d 458 (1962) (the highest bidder at a mortgage foreclosure sale acquires no title to the thing purchased but by payment of purchase money). Contra, *In re Pearson,* 75 B.R. 254 (Bankr.N.D.Ga.1985); *In re Sanders,* 108 B.R. 847 (Bankr.S.D.Ga.1989); *In re Morgan,* 115 B.R. 399 (Bankr.M.D.Ga.1990).

## FORCE AND VALIDITY GENERALLY OF ACTS IN COURSE OF SUPERSEDED ADMINISTRATION

5 *Remington on Bankruptcy,* § 2104, pp. 214–215 (Henderson), provides in relevant part as follows:

> "[t]he fact that an assignment for creditors or a receivership is superseded by bankruptcy of the debtor does not mean that it was void ab initio ... wholly completed sales of assets made in the assignment or receivership proceedings would accordingly seem to remain unaffected, but if the property has not been paid for title thereto passes to the bankruptcy trustee and the property may not be recovered except by plenary action. A sale which has not been duly confirmed ... can be vacated by the bankruptcy court...."

## CONCLUSIONS

Considering a totality of the particular facts and circumstances, it appears, in the *Glenn* context, that the Tennessee courts have not expressly addressed the exact point at which a non-judicial foreclosure sale becomes final and consummated. Is it at the time the indenture trustee accepts the highest bid at a scheduled foreclosure; upon expiration of the redemption period; when the indenture trustee executes a deed after receiving the highest bid at a properly advertised private foreclosure and payment of consideration; or is it when the indenture trustee's deed is registered? As such, the question may be one incapable of resolution through reference to existing statutory or case law, but rather one which must be based, like *Glenn,* on sound pragmatic principles which do the least equitable violence to the competing and countervailing interests.

It has been held that the receipt of a bid at a foreclosure sale merely forms a contract between the bidder and the debtor to purchase the property at bid price. See, e.g., *F.D.I.C. v. Dye,* 642 F.2d 837, 843 (5th Cir. 1981) (holding that a foreclosure sale is not final "unless the deed is transferred"). That contract is not itself an actual conveyance as the "crying of a sale" on the courthouse steps is only a step toward finalizing a foreclosure sale and does not, ipso facto, serve as evidence of a consummated foreclosure sale. See also, e.g. *McKinney v. South Boston Savings Bank,* 156 Ga.App. 114, 274 S.E.2d 34 (1980).

Here, it must be noted and emphasized that SFI's indenture trustee had not executed the deed (or similar memorandum required by the Tennessee statute of frauds) at the time the chapter 13 case was commenced. Thus, the Court finds and concludes that the subject foreclosure sale was not final, and therefore any interest the debtors may have in their home was not terminated at the time the chapter 13 case was filed. Accordingly, the debtors indeed have a right to seek to cure the economic defaults under section 1322(b)(5) of the Bankruptcy Code and *In re Glenn* rationale and to reinstate the terms of their home mortgage.

As mentioned earlier, the indenture trustee's deed here was executed and registered *after* the filing of the chapter 13 case. In *In re Smith,* 876 F.2d 524 (6th Cir.1989), the Sixth Circuit stated at pp. 525–26 as follows:

"Under section 362(a) of the Bankruptcy Code, the filing of a petition creates a broad automatic stay protecting the property of the debtor. This provision has been described as one of the fundamental debtor protections provided by the bankruptcy laws. *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 761, 88 L.Ed.2d 859 (1986) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977)). The automatic stay extends to virtually all formal and informal actions against property of the bankruptcy estate. It is intended to 'stop all collection efforts, all harassment, and all foreclosure actions.' S.Rep.No. 989, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5840. The automatic stay 'is effective upon the date of the filing of the petition ... and formal service of process will not be required.' 2 Collier on Bankruptcy ¶ 362.03 (15th ed. 1988) (footnotes omitted). Actions taken in violation of the automatic stay generally are void, even if the creditor had no notice of the stay. See, e.g., *In re Clark*, 60 B.R. 13, 14, (Bankr.N.D.Ohio 1986) (Creditor 'had not known of Debtor's filing at the time of repossession but ... it was, nonetheless, required to return the vehicle to Debtor.') *In re Advent Corp.*, 24 B.R. 612 (Bankr. 1st Cir.1982) (acts in violation of automatic stay are void regardless of lack of knowledge); Collier, supra, ¶ 362.03 ('In general, actions taken in violation of the stay will be void even where there was no actual notice of the existence of the stay.')" Cf. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993).

■ Therefore, the Court finds and concludes that under Tennessee law upon the indenture trustee's execution of the deed (or similar memorandum required by the Tennessee statute of frauds) and payment of consideration, a non-judicial foreclosure sale becomes final and terminates a debtor's right to subsequently cure defaults under 11 U.S.C. § 1322(b)(5) and the rationale set forth in *In re Glenn*, supra, provided such acts occur *before* the bankruptcy petition is commenced. This resolution and construction also will satisfy the Tennessee statue of frauds and concomitantly invoke pragmatic principles consistent with *In re Glenn*. Pre-bankruptcy registration or recordation of the indenture trustee's deed, however, is not a pre-condition to such termination of the debtor's rights *provided* that the indenture trustee's deed (or similar memorandum required by the Tennessee statute of frauds) has been executed and the consideration has passed prior to the commencement of the petition under the Bankruptcy Code.

### CONGRESSIONAL PURPOSE AND POLICY

The foregoing result additionally is consistent with the Congressional purpose and policy underlying the bankruptcy laws.

### PURPOSE

■ In enacting chapter 13 of the Bankruptcy Code, Congress was especially concerned with individuals who are able to keep up with their obligations in normal times, but do not prepare for emergencies or unexpected events such as a serious illness in a family or a job-layoff. The purpose of chapter 13 is to enable financially distressed individual debtors, under court supervision and protection, to develop and carry out a repayment plan under which creditors are paid over an extended period of time. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 118 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News pp. 5787, 5963, 6079. Moreover, *In re Taylor*, 95 B.R. 48 (Bankr.N.D.Miss.1988), the Court stated at p. 51 that "one of the primary purposes of chapter 13 rehabilitation is to save the homesteads" citing *In re Young*, 22 B.R. 620, 622 (Bankr.N.D.III.1982).

### POLICY

■ The policy that underlies chapter 13 is to encourage individual debtors to pay their debts instead of merely seeking a chapter 7 discharge. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 118 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News pp. 5787, 5963, 6079.

In *In re Taylor*, 95 B.R. at pp. 50–51 the Court made the following observations.

"It is in the best interest of debtors to allow a debtor to retain his home. 'It is a significant motivating factor for the debtor to attempt to pay off his debts through Chapter 13 rather than discharge them through Chapter 7. The debtors maintain their self respect, the unsecured creditors receive a high payoff, and the government benefits from a more stable tax base.' *In re Gwinn*, 34 B.R. 936 [ (Bankr.Ohio 1983) ]."

In conclusion, it is observed that by virtue of 11 U.S.C. §§ 506(b), 1322(b)(2) and 1325(a)(5), SFI will receive the full economic benefit of its contractual bargain including ongoing monthly contractual payments and reimbursement of all its reasonable foreclosure fees and expenses.[1]

Debtors' counsel shall prepare an appropriate bare Order consistent with the foregoing and the Court's Fed.R.Bankr.P. 7052 oral findings of fact and conclusions of law made at a bench ruling in open Court on March 24, 1994.

## SUPPLEMENTAL MEMORANDUM RE PLAINTIFFS' COMPLAINT TO SET ASIDE HOME FORECLOSURE SALE COMBINED WITH NOTICE OF THE ENTRY THEREOF

### April 5, 1995

On March 24, 1994 the Court signed a "Memorandum Re Plaintiff's Complaint To Set Aside Home Foreclosure Sale Combined With Notice Of The Entry Thereof" which was entered by the Bankruptcy Clerk on March 25, 1994.[1] The following citations shall supplement the Court's prior March 24, 1994 Memorandum.

---

1. It is also parenthetically observed that on December 7, 1993, oral arguments were made before the Supreme Court in the Ninth Circuit case of *In re BFP*, 974 F.2d 1144 (9th Cir.1992), which held that the price received at a non-collusive, regularly-conducted foreclosure sale irrebuttably establishes "reasonably equivalent value" for purposes of 11 U.S.C. § 548, which allows a bankruptcy trustee to avoid fraudulent transfers of a debtor's interest in property. *BFP v. RTC, as Receiver of Imperial Sav. & Loan Ass'n*, —— U.S. ——, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1993). See also *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985); contra, *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th

## IN RE BRADLEY

In *In re Bradley*, 75 B.R. 198 (Bankr. W.D.Va.1987), the court held, inter alia, that the debtors' principal residence was property of the broad section 541(a) estate, even though a foreclosure proceeding had been instituted against the debtors' home pursuant to a Virginia deed of trust by the mortgagee, FmHA, and the indenture trustee, who actually conducted a sale of the home prior to the debtors' commencement of a chapter 13 case. FmHA was the successful bidder at the January 26, 1987 foreclosure sale; however, a memorandum of sale was not prepared by the indenture trustee and no deed was delivered or executed when the debtors filed their section 302 chapter 13 petition on January 29, 1987.

Specifically, the *Bradley* court stated in relevant part at p. 199 as follows:

"The question simply put is whether the foregoing facts sufficiently removes this property from the Debtors' estate. Under the law of Virginia, FmHA, as a matter of state law, did not finalize the foreclosure sale prior to the date the bankruptcy petition was filed. *In re Rolen*, 39 B.R. 260, 264 (Bankr.W.D.Va.1983); See *In re Chitwood*, 54 B.R. 396 (Bankr.W.D.Va.1985); *Feldman v. Rucker*, 201 Va. 11, 109 S.E.2d 379 (1959); *Powell v. Adams*, 179 Va. 170, 18 S.E.2d 261 (1942). The Memorandum of Sale was not prepared and signed by the trustee prior to the filing of the petition. *Id.* More importantly, the trustee did not make and record a deed evidencing the sale prior to the filing of the petition by the Debtors. *In re Rolen* at 264. Therefore, even under the laws of Virginia the sale was not finalized and the Debtors

Cir.1980) (holding that so long as the debtor received at least 70% of fair market value, the foreclosure sale cannot be avoided under section 548(a)(2)(A)); Cf. *In re Bundles*, 856 F.2d 815 (7th Cir.1988) (opting for a middle ground approach).

11 U.S.C. § 546(a) provides that the bankruptcy trustee has two years after the appointment date to commence an action under section 548 seeking, e.g., to avoid a foreclosure.

1. The adversary proceeding file does not yet contain the "bare Order" referred to at page 11 of the Court's March 24, 1994 Memorandum.

retained an interest in the property when they filed their Chapter 13 petition on January 29, 1987. This interest is protected by the stay of 11 U.S.C. § 362 that became operative at the time the petition was filed.

"Under federal law, which must be considered, the legal or equitable interest the Debtors had in the property on the day the petition was filed became property of the estate. 11 U.S.C. § 541(a). Subsection 541(a) provides:

"(a) The commencement of a case under Sections 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

"(1) Except as provided in subsections (b) and (c)(2) of this section, *all legal or equitable interests* of the debtor in property as of the commencement of the case. (emphasis added)

"Because the Debtors were not divested of their interest in the real estate at the time the petition was filed, the property became property of the estate. Under 11 U.S.C. § 1322(b)(3), the Chapter 13 plan may provide for preserving this property and curing the default in payments to FmHA on this property of the estate.

"In the consideration of chapter 13 cases, it must be remembered that this is a rehabilitative statute, which must be liberally construed in debtors' favor, to carry out the intent of Congress that these financially distressed debtors shall have an opportunity to restructure their financial problems. Therefore, the federal law should apply where that aim will be promoted. *See In re Taddeo,* 685 F.2d 24, 6 C.B.C.2d 1201, 9 B.C.D. 556 (2d Cir.1982); *In re Thompson,* 17 B.R. 748 (Bankr.W.D.Mich. 1982); *In re Davis,* 15 B.R. 22 (Bankr. D.Kas.1981), *aff'd,* 16 B.R. 473 (D.Kan. 1981); *In re Thacker,* 6 B.R. 861 (Bankr. W.D.Va.1980).

"In summary, the foreclosure sale was not finalized even under the law of Virginia which does not necessarily govern deci-sions in these cases and the interest the Debtors retained at the time the petition was filed was property of the estate protected by federal law. An appropriate Order shall be entered permitting the Debtors to provide for payments to the FmHA under their Chapter 13 plan."

### IN RE RELATED PARTNERS PROPERTIES, INC.

In *In re Related Partners Properties, Inc.,* 163 B.R. 213 (D.C.S.D.Fla.1993), the court held, inter alia, that the expiration of the Florida redemption period is accomplished only when the Clerk of Court files a certificate of title and serves a copy of it.

### IN RE VALENTE

In *Valente v. Savings Bank of Rockville,* 34 B.R. 362 (D.C.Conn.1983), the District Court, on appeal, held that the Bankruptcy Court erred in denying the debtors the opportunity to cure a mortgage default after entry of a state court judgment of foreclosure since the Bankruptcy Code authorizes plans filed by chapter 11 debtors to provide for curing or waiving any default.[2]

### DEFINITION OF WORD "SALE"

*Black's Law Dictionary,* Revised Fourth Edition, at pp. 1503–1504 defines, in relevant part the word "sale" as follows:

"A contract between two parties, called, respectively, the 'seller' (or vendor) and the 'buyer' (or purchaser,) by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of property. Pard. Droit Commer. § 6; 2 Kent, Comm. 363; Poth. Cont. Sale, § 1; *Butler v. Thomson,* 92 U.S. [at] 414, 23 L.Ed. 684. *In re Frank's Estate,* 277 N.Y.S. 573, 154 Misc. 472.

"A contract whereby property is transferred from one person to another for a consideration of value, implying the passing of the general and absolute title, as distinguished from a special interest falling

---

**2.** See Epstein and Fuller, "Chapters 11 and 13 of the Bankruptcy Code—Observations on Using Case Authority from One of the Chapters in Pro-ceedings Under the Other," 38 Van.L.Rev. 901 (May 1985).

**230**

short of complete ownership. *Arnold v. North American Chemical Co.*, 232 Mass. 196, 122 N.E. 283, 284; *Faulker v. Town of South Boston*, 141 Va. 517, 127 S.E. 380, 381.

"An agreement by which one gives a thing for a price in current money, and the other give the price in order to have the thing itself. Three circumstances concur to the perfection of the contract, to-wit, the thing sold, the price, and the consent. Civ.Code La. art. 2439.

"To constitute a 'sale,' there must be parties standing to each other in the relation of buyer and seller, their minds must assent to the same proposition, and a consideration must pass. *Commissioner of Internal Revenue v. Freihofer*, C.C.A.3, 102, F.2d 787, 789, 790, 125 A.L.R. 761.

" 'Sale' consists of two separate and distinct elements: First, contract of sale which is completed when offer is made and accepted and, second, delivery of property which may precede, be accompanied by, or follow, payment of price as may have been agreed on between parties. *Inland Refining Co. v. Langworthy*, 112 Okl. 280, 240 P. 627, 629."